# THE DISTRICT OF COLUMBIA v. ROBINSON.

HIGHWAYS; EASEMENTS; TITLE BY LONG USER; PRESCRIPTION
AND DEDICATION; TRESPASS; DAMAGES; INTEREST.

1. Where user is relied upon to raise a right by prescription, it must
not only be continuous and uninterrupted, but adverse also.
2. In the trial of an action of trespass upon land against the District
of Columbia where the defense is that the land was a public
highway, it is not error prejudical to the defendant for the
trial court to instruct the jury that it is for them to say whether
certain maps produced by the defense, which are not such sur-
veys and records as a statute required to be made, together
with other facts, showed that such surveys and records were
actually made; especially where it is doubtful whether such
maps are competent evidence at all.
3. An easement in a public highway acquired by long user can not
be broader than the actual use.
4. General assignments of error, such as that "the court erred in
refusing to grant defendant's third prayer as asked and giving
it to the jury as modified," are insufficient under Rule VIII,
Sec. 3, clause (2), and this court is not bound to consider them.
5. Where the defense by a municipality to an action against it for
trespass upon land is that the land is a public highway by pre-
scription, the burden is on the defendant to establish its claim
by proof of adverse and uninterrupted enjoyment by the public
for twenty years or more, with knowledge of the owner and
under a claim of right, and not a tolerated or permissive use
by him only.
6. Dedication of land as a public highway may be presumed from
the long continued public user for the time required in case of
prescription, twenty years, where there is no evidence to the
contrary and where the circumstances attending such use are
not inconsistent therewith, without proof of a direct public
act indicating an intent to dedicate; or it may arise from un-
equivocal acts and declarations within a shorter period if fol-
lowed by an acceptance on the part of the public authorities.
7. Where in an action against a municipality for trespass on land
and the excavation and taking away of gravel therefrom, the
defense is that the land was a public highway, and the testi-
mony tends to show that the width of the road as actually used
was not more than 25 feet while the width of the excavation was
not less than 33 feet, it is not error for the trial court to instruct

the jury that if they believe the road was a public highway, but was not of greater width than indicated by the actual use, they should find for the plaintiff and assess such damages as should have accrued by reason of the excavation and removal of gravel beyond the boundaries so ascertained.

8. Where, in such a case, there is evidence tending to show that the excavating injured the road for travel and was not done for its improvement but solely to obtain gravel to improve another and distant road, it is not error for the trial court to instruct the jury that if they find for the plaintiff damages should be assessed to the full extent of the gravel removed, even though they should also find that the road at that point was a public highway ; especially where the court further explained carefully to the jury that the right to recover for the gravel taken depended exclusively upon the fact whether the excavating had been in execution of a purpose to improve the road, and if one of the purposes of the defendant was to improve the road, or render it better for public travel, then it had the right to remove the gravel obtained from the excavation and use it on any other public road, regardless of locality, without liability to the plaintiff for damages.

9. In such a case, it is not error for the trial court to instruct the jury that if they find for the plaintiff they may enhance the damages by a sum not greater than the interest on the amount from the date of the commencement of the suit, if they shall find such allowance would be reasonable ; *following* Railroad Co. *v.* Hickey, 12 App. D. C. 269.

No. 820. Submitted March 2, 1899. Decided April 11, 1899.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia on verdict in an action against the District of Columbia for trespass on the land of the plaintiffs and the removal of gravel therefrom. *Affirmed.*

The COURT in its opinion stated the case as follows :

This action was begun by Conway Robinson, senior, against the District of Columbia, on February 28, 1882, to recover damages for an entry upon plaintiff's land and the removal therefrom of a quantity of gravel of the alleged value of $10,000.

The death of the plaintiff was suggested on February 18,

14 Ct. App.—34

1884, and the action was thereafter revived in due form by his executors, Leigh Robinson and Conway Robinson, Jr.

In addition to a plea of not guilty and of limitation, the defendant filed a third, alleging that at the time of the alleged trespass "there was and of right ought to have been a certain highway, to wit, Glenwood road, sometimes called Harewood road, over the land of the plaintiffs' testator for all persons to go, return, pass and repass on foot, and with horses and cattle, and carriages, at all times of the year at their free will and pleasure; whereof the defendant says that having occasion to repair and improve said highway, it entered upon the same, as it lawfully might, and removed certain gravel, soil and subsoil, and used the same in the improvement of certain other public highways in said District communicating with and intersecting the Glenwood or Harewood road aforesaid, and graded, repaired and improved the said Glenwood or Harewood road so as to make it convenient and safe for public travel, doing no unnecessary damage in that behalf, which are the supposed trespasses whereof the said plaintiffs have now thereof complained."

It appears without contradiction that the tract of land from which the gravel was taken, formerly called a part of Pleasant Plains, and sometimes Agg's farm, is now known as the Vineyard, and contains seventy-four acres, two rods and three perches. It adjoins the Soldiers' Home grounds, and embraces one of the highest elevations of the District, from which a beautiful view of the adjacent city, with its public buildings, and of the surrounding country, is afforded. The Harewood road aforesaid forms part of the eastern boundary of the Soldiers' Home and the western boundary of the Catholic University grounds. It crosses the Vineyard tract—length 1,700 feet—and runs into what is called Rock Creek Church road.

No question is made in respect of the fee simple title of Conway Robinson, senior, to the Vineyard tract. He entered into possession under a conveyance from John Agg,

about May 15, 1857. This conveyance had a descriptive plat annexed which shows no road or way across the said tract; nor is there any reservation, exception or mention of the Harewood road in any of the conveyances under which said land has been held since the year 1798.

The plaintiffs offered testimony tending to prove the following facts concerning the said Harewood road: The part of the road on the Vineyard tract was formerly called "Agg's road;" that adjacent to the Soldiers' Home tract, then belonging to George W. Riggs, was called "Riggs' road;" and the part south of the Vineyard, running between the parts of the old Pleasant Hills tract, owned respectively by James White and Henry Duley, was called "Duley's lane." The use of said road began and was permitted for the accommodation of the owners of the said adjoining lands, and other neighbors were permitted to pass over the same for convenience. John Agg changed the line of said way across the Vineyard at one time in order to remove it farther from his house. At an early day there was a fence on the south side of the road where it crossed the Vineyard, and there were fences on the eastern and western boundaries of said tract, before and after the change of the way by Agg. From 1842 to the date of the conveyance to plaintiffs' testator, May 15, 1857, a gate was maintained across the said road on the eastern boundary of the Vineyard tract, and on the latter date two gate posts stood on opposite sides of the road where it entered or crossed the western boundary. The posts of the eastern gate stood until some time after the commencement of the Civil War in 1861. Taxes were paid upon the tract as a whole, including that within the limits of the road. Conway Robinson, senior, built a stone wall several hundred feet long within the limits of the road, and exercised other acts of ownership thereover during his occupation of the land as a home. No grant or dedication were ever made of a right of way or easement to the public, and there has been no condemnation. Before the commencement

of the Civil War in 1861 the road was little used, there being few people to travel it. It was so narrow that two carriages could not pass without one turning out of the way, and at the time of the trespass complained of, in 1880, the tract, as used, was from twenty to twenty-five feet wide. The road was not repaired or recognized by the public authorities until after the said Civil War.

In 1878, Beale, the supervisor of public roads, made some ridges across the road in order to drain it, which, upon objection of plaintiffs' testator, were removed, and the road restored to its former condition and appearance. No change was ever made in the surface or grade of the road by the public authorities, before the act complained of in this suit, though there were some ordinary repairs after the war, which were of a character not objected to by the plaintiffs' testator. That no such superficial repairs were made until after 1865, and that no objection was made by the plaintiffs' testator to these when in accord with his wishes. Between 1866 and 1868, boundary stones, with the official mark, L. C., were erected along said way designating a width of thirty-three feet. This was wider than the way that had been used. Plaintiffs' testator did not recognize the right of the Levy Court to erect these stones, some of which were within his fences, and removed them whenever it suited his purposes to do so.

In 1880 the District of Columbia, wishing to obtain gravel for the improvement of Seventh Street road, entered upon the land over the protest of plaintiff's testator, and made an excavation in the said road about 418 feet long, fourteen feet deep in the middle and thirty-three feet wide, and removed more than 5,000 cubic yards of gravel. The work was not done for the improvement of this road at all, but was expressly declared to be for the sole purpose of obtaining the gravel, which was of excellent quality, for use as a top dressing on Seventh Street road. Said Seventh Street road was about one and three-quarters miles from

Harewood road; was a separate and distinct road running in another direction, and separated by the width of the Soldiers' Home grounds. At some points the excavation extended to the stones within plaintiff's fences and caused them to fall. Its effect was to separate one part of plaintiffs' land from the other, which would necessitate extensive grading on each side at great expense. This grading would destroy valuable ornamental trees, as well as injure the view formerly had from the summit of the hill. The surface of the road was left in bad condition, the gravel being all removed down to the clay foundation, which was left in holes, wherein water accumulated. Evidence was also introduced tending to prove the value of the gravel taken, and the amount of damages otherwise sustained.

The defendant offered evidence tending to prove: That the said road had been used since 1848 as a public road. People passed over it without hindrance with horses, vehicles, and so forth. But few people lived in the neighborhood and these used it for convenience in going to Rock Creek church and elsewhere. This public use was more or less confined to these neighbors until after 1861. Then it was much used by soldiers and others as a thoroughfare. The National Cemetery was located near Rock Creek church. In 1867, or 1868, the boundary stones, marked L. C., were set, marking a road thirty-three feet wide, under supervision of the county surveyor.

The road was repaired by public officials after the war and at public expense; one witness testifying that this was done on one occasion, also, prior to the war.

The Levy Court was accustomed to have county roads surveyed by the District surveyor and maps made of the same when needed. The Levy Court records were not produced to show an official designation or survey of the said road. In working on the road between 1869 and 1871 no map was used.

Such of the old Levy Court records and papers as were

turned over to the new government are in a vault in the District building. There was found among these a copy of an old map—date not given; a map made in 1873, under the legislative government that succeeded the old corporation and the Levy Court; and a map purporting to have been made by one Boscke. Boscke was an engineer employed in the United States Coast Survey and made his map in 1857.

The Harewood road appears, by the scale of these maps, as thirty-three feet wide. No course and distance is given and no angles are marked. The maps were introduced in evidence over the objection of the plaintiffs.

The gravel was wanted for use on Seventh Street road, and Mr. Twining, one of the District Commissioners, ordered it dug and the road reduced to an easy grade. A small quantity of the gravel was used on the Bunker Hill road and Lincoln avenue. Bunker Hill road connects, at some point not stated, with Harewood and Rock Creek Church roads. The benefits received from grading the road equaled the damages caused by the excavation.

Upon the conclusion of the evidence, the defendant prayed the court to direct a verdict for it. This was refused, and exception taken. The jury found for the plaintiffs and assessed the damages at $8,000.

*Mr. S. T. Thomas,* Attorney for the District of Columbia, and *Mr. A. B. Duvall,* Assistant Attorney, for the appellant:

1. The trial court erred in sustaining a demurrer to the defendant's plea of public highway, and its right to change the grade and improve the road as a legal incident to the right of public highway. If Harewood road was a public highway, then it was the duty of the District of Columbia, acting by its Commissioners, to improve it, and make it fit for public travel. If in doing so it was found necessary to remove earth and gravel, this might be done and the surplus earth and gravel used in improving other public highways be-

longing to the same system of highways. Although the abutting owner may own the fee of a public road, he has no title to the surplus soil resulting from grading or improving it. As to the right of removal of soil from one public highway to repair another, see *Denniston* v. *Clark*, 125 Mass. 216; Elliott, Roads and Streets, 523; Dillon, Mun. Corp., Sec. 687.

There is no material difference in principle with regard to the extent of the rights of the public in public highways, whether the fee is in the public, or in the adjacent landowner, or in some third person. *Barney* v. *Keokuk*, 94 U. S. 340.

2. The court erred in granting the plaintiffs' second prayer. This prayer was not clear, and practically left the jury to determine the question whether Harewood road was a public highway. It assumed without evidence that the plaintiffs' testator had objected to Harewood road being considered a public highway to the width it was used by the public, or that he ever gave the public any permission, leave, or license to use Harewood road over his land. There was no evidence that Mr. Robinson ever denied the right of the public to use Harewood road from 1857, when he acquired the land abutting upon it, down to 1880 and 1881, when the District changed the grade. He never placed any gate or barrier across Harewood road to prevent people from using it. He never, in fact, objected to or obstructed the use by the public of this road. On the contrary, he encouraged such use. *Day* v. *Allender*, 22 Md. 511; *Cohoes* v. *Canal Co.*, 134 N. Y. 397.

3. Harewood road was a public highway. On the appellees' evidence alone it was plain that their testator had dedicated Harewood road. On the whole evidence the trial judge should have instructed the jury that Robinson dedicated Harewood road to the full width of thirty-three feet. Boundary stones lettered "L. C.," designating a road of that width, were set by the Levy Court in the presence of the

appellees' testator, who was a lawyer, and knew that the Levy Court stones indicated that the public claimed a road thirty-three feet wide. Mr. Robinson, by his silence, acquiesced in that claim.

Before the Levy Court set- the boundary stones, in 1868, Mr. Robinson had acquiesced in the use of the road by the public for eleven years. If there ever were any gates across Harewood road, or any obstructions to the use of it by the public, they were removed prior to Mr. Robinson's acquisition of the property.

4. Twenty years' use of a road by the public makes it a public highway. Some confusion has resulted from confounding dedications resting upon presumptions with the right given by the Statute of Limitations. Twenty years' use by the public under claim of right evidenced by the use will give a right to the road or street, of which the owner of the fee can not divest the public, no matter what may have been his intention. Irrespective of the question of intention, uninterrupted user may give the public an irrevocable right. Public use, for the period of twenty years, makes the public right as unimpeachable as if it had been created by an express grant, and there need not be any evidence whatever of an intention to dedicate. Elliott on Roads and Streets, 123. If the owner of the soil throws open a passage, and neither marks, by any visible distinction, that he means to preserve all his rights over it, nor excludes persons from passing over it by positive prohibition, he shall be presumed to have dedicated it to the public. Although the passage in question was originally intended only for private convenience, the public are not now to be excluded from it after being allowed to use it so long without any interruption. *Rex* v. *Lloyd*, 1 Campb. 260; *Rugby Charity* v. *Merryweather*, 2 East, 375, note; *Woodyear* v. *Hadden*, 5 Taunt. 125; *Wood* v. *Veal*, 5 Barn. & Ald. 454.

5. The common law principle of dedication is made up of several distinct elements. The intention to dedicate may

be presumed from the owner's acquiescence in those conditions which in law are evidence of dedication. *Columbus* v. *Dahn*, 36 Ind. 330; *Smith* v. *State*, 23 N. J. L. 712. An acceptance by the public of the use dedicated must be shown. *Hobbs* v. *Lowell*, 19 Pick. 405; 2 Dill. Mun. Corp., Ch. 17, cases cited in notes. The acceptance by the public may be by use. *Hemphill* v. *Boston*, 8 Cush. 195; *Pomfrey* v. *Saratoga*, 34 Hun, 607; *Cincinnati* v. *White*, 6 Pet. 431; *Guthrie* v. *New Haven*, 31 Conn. 308; *Stone* v. *Brooks*, 35 Cal. 489. The length of time user by the public continues has been held immaterial in a common law dedication, as intention is the fundamental element in dedication, and the dedication is established when the intention is first shown to have existed. *Reg.* v. *Petrie*, 30 Eng. L. & Eq. 207; *Wyman* v. *State*, 13 Wis. 664; *Green* v. *Oakes*, 17 Ill. 249; *State* v. *Taff*, 37 Conn. 392; *Chapin* v. *State*, 24 Conn. 236; *Jarvis* v. *Dean*, 3 Bing. 447; *Rowan* v. *Portland*, 8 B. Mon. 232.

When the intention to dedicate can not be shown by express evidence, the length of time a public user must continue, to lay the foundation for inferring the existence of a dedication or a grant, is twenty years. *Jennings* v. *Tisbury*, 5 Gray, 74; *Holt* v. *Sargent*, 15 Gray, 97; *Williams* v. *Cummington*, 18 Pick. 312; *Valentine* v. *Boston*, 22 Pick. 75; *Com.* v. *Coupe*, 128 Mass. 63. When long user is relied on to prove dedication it need not be shown by whom the dedication was made. *Reg.* v. *Petrie, supra*; *Queen* v. *East Mark*, 11 Q. B. 877. The element of adverse right, where the bare fact of user for twenty years is relied on to constitute dedication, is supplied by an uninterrupted enjoyment by the public for twenty years. *Onstott* v. *Murray*, 22 Iowa, 457; *Thayer* v. *Boston*, 19 Pick.; *Green* v. *Oakes*, 17 Ill. 249. And a public use of property or rights for twenty years without interruption has been held sufficient evidence of dedication without further proof. *Barclay* v. *Howell*, 6 Pet. 498–513; *New Orleans* v. *United States*, 10 Pet. 718; *Parrish* v. *Stephens*, 1 Ore. 59; *Lemon* v. *Hayden*, 13 Wis. 167;

*McConnell* v. *Lexington,* 12 Wheat. 582; *Waugh* v. *Leech,* 28 Ill. 488. . This proposition rests upon the theory that a user uninterrupted and unexplained for twenty years is adverse. *Blake* v. *Everett,* 1 Allen, 248; *Leonard* v. *Leonard,* 7 Allen, 277; *Barnes* v. *Haynes,* 13 Gray, 188; *Sargent* v. *Ballard,* 9 Pick. 251; *Samuels* v. *Borrowscale,* 104 Mass. 210; *Hammond* v. *Zehner,* 21 N. Y. 118; *Perrin* v. *Garfield,* 37 Vt. 204; *Polly* v. *McCall,* 37 Ala. 20.

6. The presumption of a grant or dedication arising from twenty years' uninterrupted and unexplained user by the public is imperative and conclusive. *Tyler* v. *Wilkinson,* 4 Mason, 397; *Leonard* v. *Leonard,* 7 Allen, 277; *Ross* v. *Thompson,* 78 Ind. 90; *Veale* v. *Boston,* 135 Mass. 187; *State* v. *Atherton,* 16 N. H. 203; *Stevens* v. *Nashua,* 46 N. H. 192; *Wood* v. *Hurd,* 34 N. J. L. 87. Dedication once complete is irrevocable. *Dummer* v. *Jersey City,* 20 N. J. L. 86; *Kennedy* v. *Cumberland,* 65 Md. 514; *Post* v. *Pearsall,* 22 Wend. 425; *Warren* v. *Jacksonville,* 15 Ill. 236. It will be sufficient if the road was traveled as much as the circumstances of the surrounding population and their business required. *Baldwin* v. *Herbst,* 54 Iowa, 168; *Bodfish* v. *Bodfish,* 105 Mass. 317; *Com.* v. *Petitcler,* 110 Mass. 62; *Schatz* v. *Pfeil,* 56 Wis. 429. Denials of the right, complaints, remonstrances or prohibition of the use of the way, made by the owner of the fee, if unaccompanied by acts which in law would amount to a disturbance of the right and be actionable as such, will not prevent the acquisition of a right of way by prescription. *Railroad Co.* v. *McFarlan,* 43 N. J. L. 605; *Kimball* v. *Ladd,* 42 Vt. 747.

7. The motive and purpose of the defendant in grading Harewood road can not be inquired into. *Railroad Co.* v. *Defiance,* 160 U. S. 88.

8. The defendant had color of title to Harewood road as a public highway of the width of thirty-three feet. It was the duty of the late Levy Court, which had jurisdiction over the public roads of the District outside the limits of Wash-

ington and Georgetown, to cause such roads to be surveyed, platted, and recorded. It was also the duty of that court to mark the boundaries of public highways by setting boundary stones at the different angles thereof. Such stones were by order of the Levy Court set at the different angles of Harewood road in 1868. The books and records of the Levy Court were lost and could not be produced at the trial, but it is to be presumed that the Levy Court caused Harewood road to be surveyed, platted and recorded prior to the setting of the boundary stones, as required by law. But even if at the time the Levy Court set the boundary stones in 1868, Harewood road had not been used by the public for twenty years, and was not a public highway by prescription, then the most that can be said is that the proceedings to make Harewood a statutory road, of the width of thirty-three feet, were defective. Nevertheless they still constituted color of title. Color of title is not necessarily founded upon a writing. It may arise from an act *in pais* without a writing. *Teabout* v. *Daniels,* 38 Iowa, 158; 2 Smith Lead. Cases (8 Am. Ed.), 711; *Hughes* v. *Israel,* 73 Mo. 538; *McCall* v. *Neely,* 3 Watts (Pa.), 69; *Green* v. *Kallum,* 23 Pa. St. 254; *Allen* v. *Mansfield,* 108 Mo. 343. Defective condemnation proceedings may constitute color of title. *Cogsbill* v. *Mobile RR.,* 92 Ala. 252; *Mobile* v. *Cogsbill,* 85 Ala. 456; *Miss. RR.* v. *Devaney,* 42 Miss. 555.

*Mr. W. D. Davidge, Mr. Leigh Robinson* and *Mr. Conway Robinson, Jr.,* for the appellees:

1. Precarious use as contradistinguished from prescriptive or adverse use. A right of way, public or private, is an easement or servitude—an incorporeal hereditament. "It lies not in livery, but in grant." Washburn on Easements, (4th Ed.), 6. "Highways are regarded as easements." Id. 252.

In modern practice a period of use and enjoyment is fixed at a length of time answering to the period of limitation beyond which one dispossessed of lands is not at liberty to

regain his seisin by making entry for that purpose. The limitation of twenty years prescribed by the Statute of 21 Jac. 1, Ch. 21, for actions of ejectment, has by analogy been adopted in this jurisdiction and in those States where other provision is not made in the local statutes of the State.

In the first place issue was joined upon defendant's plea of common and public highway. The affirmative of this issue and the burden of proof under it rested, therefore, upon the defendant. *Corporation* v. *Butler*, 2 Gray, 132; *Powers* v. *Russell*, 13 Pick. 76; *Caldwell* v. *Steamboat Co.*, 47 N. Y. 290; *Spaulding* v. *Hood*, 8 Cush. 606; 1 Greenleaf on Ev. (14th Ed.), Sec. 74, p. 104, note *a*.

Coming to the question of user, to which plaintiffs' second prayer particularly relates, the authorities are clear that the party who relies upon and claims under such user to prove a right of way or easement must make out, not the mere user alone, but each and every essential quality and ingredient necessary to thereby establish such right of way or easement. Washburn on Easements (4th Ed.), 151; *Oliver* v. *Hook*, 47 Md. 311; *American Co.* v. *Bradford*, 27 Cal. 368; *Comm.* v. *Kelly*, 8 Gratt. (Va.), 632; *Nelson* v. *Madison*, 3 Biss. (C. Ct.), 253; *Colvin* v. *Barnett*, 17 Wend. 568; *Sargent* v. *Ballard*, 9 Pick. 255. If the use commences as a mere precarious use, it continues as such until the party enjoying such use does some act clearly and unequivocally indicating to the owner of the soil that the use is being exercised or enjoyed adversely to such owner; and the period of prescription will not even begin to run till some such unequivocal adverse act is brought home to the knowledge of the owner of the soil. *Smith* v. *Miller*, 11 Gray, 149; *Taylor* v. *Gerrish*, 59 Conn. 571; *Wiseman* v. *Luckinger*, 84 N. Y. 42; *Cunningham* v. *San Saba Co.*, 20 S. W. Rep. 942.

Even twenty years' exclusive and adverse use and enjoyment is not conclusive evidence of the right. *Nichols* v. *Aylor*, 7 Leigh (Va.), 558; *Mayor* v. *Horner*, 1 Cowper, 108. So, even where exclusive, uninterrupted, open and adverse

use and enjoyment of a road under a claim of right for the required length of time is proved without any explanatory, qualifying or rebutting circumstances, still it is not conclusive as the Statute of Limitations would be, and does not justify the court in taking the question from the jury; but, on the contrary, is mere evidence for the jury, and must be left to the jury to make the presumption or not, as they see fit. *Stevens* v. *Taft*, 11 Gray, 33; *Livett* v. *Wilson*, 11 E. C. L. 66.

The District, having the burden of proof resting upon it and having to establish, not merely user by the public for the required length of time, but every essential element, quality and ingredient showing such user to be adverse and under a claim of right, is bound, in order to prove its plea by this kind of evidence, to satisfy the jury that such user can not be placed upon any other footing than a claim or assertion of right.    If, therefore, the proof shows that the use and enjoyment were by permission, comity, license, indulgence, favor or toleration, or can be placed upon any other footing than a claim or assertion of right, then such proof will not maintain said plea of common and public highway, because such proof unquestionably repels any presumption of a grant, and establishes what is called a precarious use, which never ripens into an adverse use, no matter how long continued.    *State* v. *Green*, 41 Iowa, 695; *Beasley* v. *Clarke*, 29 E. C. L. 728; *Polly* v. *McCall*, 37 Ala. 29; *Cox* v. *Forrest*, 60 Md. 79; *Pentland* v. *Keep*, 41 Wis. 501; *Shellhouse* v. *State*, 110 Ind. 511; *Pue* v. *Pue*, 4 Md. Ch. 387.

There are numerous cases in which one's use of a road over or privilege in another's land is held to be precarious and not adverse, though he never in fact went through the form of actually asking the owner's leave.    *O'Neal* v. *Blodgett*, 53 Vt. 217; Washburn on Easements, *89, 92.

Where the use is by comity, indulgence, or toleration, or can be placed upon any other footing than a claim or

assertion of right, it will not be an adverse use, but a precari-
ous use, although frequently in such cases it might be,
strictly speaking, used without leave.   In short, proof that
the use is by leave is one way of showing that the use is not
adverse, but it is not the only way.   *Golding* v. *Williams*,
Dudley (So. Ca.), 95.

A grant is presumed, not because it appears that a grant
might have issued, but because the supposition of a lost
grant satisfactorily accounts for, explains, reconciles and
harmonizes the evidence, and because the evidence in the
case would be inconsistent with the non-existence of such
grant.   *Ricard* v. *Williams*, 7 Wheaton, 109.

2. A dedication is a gift.   Its three essential elements are:
(1) Intent to dedicate;  (2) act of dedication;  (3) acceptance
of dedication.   Mere intention to dedicate does not of itself
amount to a dedication, for such intention may never be car-
ried out.   One may contemplate doing a thing or intend to
do a thing, yet never do what he contemplated or intended.
The intent counts for nothing unless put into execution.
The intent to dedicate is therefore wholly separate and dis-
tinct from the act of dedicating.   The intent is necessary;
the execution of that intent is equally necessary.   A party
is not bound by, and may revoke, mere intention to dedicate
because without consideration.   He may for the same reason
change his mind and repudiate it, even after an express act
of dedication, if the dedication has not been accepted.   In
the dedication of a road to the public the intent to dedicate
and the act of dedication must come from—spring from—the
owner of the soil.   It is wholly immaterial what others in-
tend or do.   No one can divest another person of his prop-
erty on the ground of dedication, either without or contrary
to such owner's own intentions or own acts.   The acceptance
of his dedication must be by the proper authorities who are
authorized to act for and on behalf of the public.   *State* v.
*Green*, 41 Iowa, 695; *Shellhouse* v. *State*, 110 Ind. 513; *Har-
ris* v. *Comm.*, 20 Gratt. 837;  *Brinck* v. *Collier*, 56 Mo. 164;

*Comm.* v. *Kelly,* 8 Gratt. 636; *Mansur* v. *State,* 60 Ind. 362; *Bowers* v. *Manufacturing Co.,* 4 Cush. 340; *Mayberry* v. *Standish,* 56 Me. 353; *Oswego* v. *Canal Co.,* 6 N. Y. 257; *Boyd* v. *Woolwine,* 40 W. Va. 286.

In the case at bar no record of the Levy Court or county court is in evidence showing or tending to show any acceptance of Harewood road as a public road, and so, "it must be taken that there was none." In the case at bar it is perfectly manifest there was no intention to dedicate or act of dedication. There can be no acceptance of a dedication on the part of the public unless there is an intention to dedicate and an act of dedication on the part of the owner. See *Comm.* v. *Newbury,* 2 Pick. 56; *Worth* v. *Dawson,* 33 Tenn. 62, 63; *Stacey* v. *Miller,* 14 Mo. 479.

This question came before the Supreme Court of the United States, where it was contended that a road which had been used by the public as a highway for more than thirty years was a highway both by dedication and by prescriptive use or long use; and that court decided against both contentions. *Irwin* v. *Dixion,* 9 How. 30, 33. See, also, *Harris* v. *Comm.,* 20 Gratt. 837; *McCormick* v. *Mayor,* 45 Md. 523; *State* v. *Horn,* 35 Kans. 720; *Tucker* v. *Conrad,* 103 Ind. 353.

3. A highway acquired by prescription or long use is merely of the width actually used for and at the end of the prescribed period of twenty years. *Plummer* v. *Ossipee,* 59 N. H. 55; Elliott on Roads, 136; *Scheimer* v. *Price,* 65 Mich. 639; *Cahill* v. *Layton,* 57 Wis. 611; *Ehret* v. *Railway Co.,* 20 Mo. App. 262; *Epler* v. *Niman,* 5 Ind. 460; *Hart* v. *Trustees,* 15 Ind. 227; Washburn on Easements (4th Ed.), 135, 149, 150; *State* v. *Welpton,* 34 Iowa, 144, 146; *Walker* v. *Caywood,* 31 N. Y. 63; *Watrous* v. *Southworth,* 5 Conn. *309, 311; Act of Congress of June 25, 1864, Ch. 157, Sec. 6, (13 Stat. L. 193).

4. The following are each and all essential ingredients or elements of statutory highway under the Act of May 3, 1862: (1) That the road had been used by the public for twenty-five years or more prior to May 3, 1862—that is to say, from

May 3, 1837, or earlier, down to May 3, 1862. (2) That it had been used by the public during such prescribed period as a highway—that is to say, not precariously, but adversely and under a claim of right. (3) That it had been recognized by the Levy Court as a public county road prior to May 3, 1862. (4) That said Levy Court had appropriated and expended money for its repair prior to May 3, 1862. If any of the foregoing ingredients or elements be wanting, the road certainly will not and can not be a statutory highway under the foregoing law. (5) In addition to these prerequisites, the road is required to be surveyed, platted, and recorded as a highway prior to July 1, 1868.

The act of May 3, 1862, and its supplements, when taken in connection with the prior legislation and with section 269, R. S. D. C., shows that no right of public highway by prescription or by long adverse use, etc., prior to May 3, 1862, can be maintained in this District if such highway is not surveyed, platted, and recorded under and in accordance with the provisions of said act of May 3, 1862, and its supplements. The act would be unconstitutional and void unless the previous public use of the road were adverse and under a claim of right. Otherwise it would manifestly be a taking of private property for public use without just compensation, and would fall directly within the prohibition of the Constitution. This would be so even were the statute silent as to the character of the user. *Kirk* v. *Smith*, 9 Wheat. 288.

By the express terms, however, of the statute under consideration the road must have been used by the public for the prescribed length of time "as a highway," which is only another way of saying that an adverse user under a claim of right is requisite. *Mayberry's Case*, 56 Me. 349.

5. An innocent purchaser for value, without notice takes land free and clear of rights of way or easements over the same, which are not duly acknowledged and recorded under the registration acts. Act of Md. of 1715, Ch. 47, Sec.

8; Id. 1766, Ch. 14, Sec. 2; *Hays* v. *Richardson*, 1 G. & J. 369; *Addison* v. *Hack*, 2 Gill, 228; *Mitchell* v. *Seipel*, 53 Md. 276; *Foster* v. *Browning*, 4 R. I. 50; *Deacons* v. *Doyle*, 75 Va. 262; *Patton* v. *Quarrier*, 18 W. Va. 454; *Pentland* v. *Keep*, 41 Wis. 499, 500, 501; *Scott* v. *Bentel*, 23 Gratt. (Va.), 8.

6. Non-recordation as a public highway tends to prove its use by the public was not adverse or under a claim of right, but merely permissive or precarious. R. S. D. C., Sec. 246, 248; *United States* v. *Schwarz*, 4 Cr. C. C. 160, 161; *United States* v. *Emery*, 4 Cr. C. C. 270; *Brander* v. *Justices*, 5 Call, 554; *United States* v. *King*, 1 Cr. C. C. 444, 445.

No presumption of a grant of common and public highway or presumption of a rightful creation of such a highway in any lawful manner can be made where circumstances exist which negative the presumption of such acquisition. Angell on Highways (3d Ed.), Sec. 152, p. 177.

There can be no more convincing proof that the lane or road in controversy was not a common or public highway than the testimony in the record concerning the gates and gate posts erected across the road. *Jones* v. *Davis*, 35 Wis. 382; *State* v. *Strong*, 25 Me. 297; Washburn, 209; Elliott 130; *Roberts* v. *Carr*, 1 Camp. 262; *Carpenter* v. *Gwynn*, 35 Barb. 406.

" Payment of taxes assessed by the local authorities is evidence tending to defeat the presumption " of its being a public road or highway. Elliott on Roads, 131; *Comm.* v. *Newbury*, 2 Pick. 56; *Bowman* v. *Wickliffe*, 15 B. Monroe (Ky.), *96; *Nelson* v. *Madison, supra*; *Irwin* v. *Dixion*, 9 How. 32. An easement will not arise by prescription where the facts show that the owner of the servient estate has habitually broken and interrupted the use whenever he thought proper to do so. *Kerschner* v. *Railroad Co.*, 67 Ga., 760; *Colvin* v. *Burnett* 17 Wend. 568, 569; *Golding* v. *Williams*, Dudley (So. Car.), 94. In the case at bar the exercise of the right was not only disputed, but was prevented by the owner of the soil when he saw fit to do so. *Dodge* v. *McClintock*, 47 N. H. 387.

7. A right to grade is not an incident of mere highway; it is not a common-law incident of highway; it only exists when contained in, bestowed by, and flowing from statutory law in force when the right of highway was originally acquired. Gravel, minerals, mines, etc., beneath the surface of the highway belong to the owner of the fee. *Barclay* v. *Howells,* 6 Pet. 513; *Harris* v. *Elliott,* 10 Pet. 55; *Bosley* v. *Canal,* 3 Bl. (Md.), 67; *Stackpole* v. *Healy,* 16 Mass. 34; *Comm.* v. *Peters,* 2 Mass. 127; *Robbins* v. *Borman,* 1 Pick. 123; *Bolling* v. *Petersburg,* 3 Rand. (Va.), 572, 573; *Makepeace* v. *Warden,* 1 N. H. 16; *Dubuque* v. *Maloney,* 9 Iowa, 456, 461; *West Covington* v. *Freking,* 8 Bush, (Ky.), 126; *Taylor* v. *Armstrong,* 24 Ark. 102, 106; *Gidney* v. *Earl,* 12 Wend. 98; *Perley* v. *Chandler,* 6 Mass. 456; *Adams* v. *Emerson,* 6 Pick. 58; *Cortelyou* v. *Van Brundt,* 2 Johns. 363; *Leader* v. *Moxon,* 3 Wilson, 461; *Roberts* v. *Read,* 16 East, 216.

8. The duly constituted public authorities can not grade or improve a public highway (as contradistinguished from repairing or maintaining it) without express statutory authority authorizing and empowering them to grade or improve the same. Such was the common law of England, and such always was and still is the law of England. The common law is expressly adopted as the law of Maryland and of this District, except so far as the same has been changed or altered by statutes in force in this jurisdiction. Our public authorities can not justify grading or improving a public road or highway in which they have a mere right of way or easement without showing some statutory right or power so to do. *Blake* v. *Rich,* 34 N. H. 285; *Williams* v. *Railroad,* 16 N. Y. 100; *Trustees* v. *Railroad Co.,* 3 Hill, 567; *Kelsey* v. *King,* 33 How. Pr. R. 47–50; *Comm.* v. *Fisher,* 110 Pa. 464, 465; *Miffin* v. *Railroad Co.,* 16 Pa. St. 191–194; *Dubuque* v. *Maloney,* 9 Iowa, 456; *Williams* v. *Road Co.,* 21 Mo. 583; *Road Co.* v. *Renfro,* 58 Mo. 273, 274; *Peddicord* v. *Railway Co.,* 34 Md. 454–480.

9. Whether the public authorities have or have not power

to grade a highway, they can not legally grade the soil beyond the width or limits of such highway without exercising, according to law, their lawful power of eminent domain by proper condemnation proceedings and making just compensation.

10. Powers conferred upon the principal officers of a municipal or other corporation are corporate franchises or corporate powers of the corporation itself. *West* v. *Brookport*, 16 N. Y. 170. Such powers conferred by legislative authority as involve the exercise of judgment and discretion can not be delegated; they can only be exercised by the corporate officers or body on whom conferred. 15 Am. & Eng. Encyc. L. 1043; *St. Louis* v. *Clemons*, 43 Mo. 403; *Ruggles* v. *Collier*, 43 Mo. 376; *Birdsall* v. *Clark*, 73 N. Y. 76; *State* v. *Fiske*, 9 R. I. 96; *Lyon* v. *Jerome*, 26 Wend. 498; *Hydes* v. *Joyes*, 4 Bush. (Ky.), 467. Where the thing done is within the corporate power and might have been lawfully accomplished had the corporate authorities proceeded according to law, the corporation will be liable as a wrongdoer in an ordinary action at law for acts of its officers and servants proceeding contrary to law or in an irregular manner. *Sprague* v. *Tripp*, 13 R. I. 39; *Soulard* v. *St. Louis*, 36 Mo. 552; *Platter* v. *Seymour*, 86 Ind. 325; *Thayer* v. *Boston*, 19 Pick. 515; *Gordon* v. *Taunton*, 126 Mass. 352; *Hawks* v. *Charlemont*, 107 Mass. 417; *Allen* v. *Decatur*, 23 Ill. 274; *Sheldon* v. *Kalamazoo*, 24 Mich. 385; *Crossett* v. *Janesville*, 28 Wis. 426; *Dove* v. *Milwaukee*, 42 Wis. 117; *Mott* v. *New York*, 2 Hilton (N. Y.), 364; *Pettis* v. *Providence*, 11 R. I. 374; 2 Dillon, Mun. Corp., Sec. 766 et seq.; Elliott on Roads, 347 et seq.; *Ashley* v. *Port Huron*, 35 Mich. 301; *Stanley* v. *Davenport*, 54 Iowa, 467; *Sherman* v. *Grenada*, 51 Miss. 190; *Wilde* v. *New Orleans*, 12 La. Assn. 15. Even where a right of highway, with power to grade or improve the same exists, the public authorities can not lawfully, without exercising such power to grade or improve that highway, obtain gravel or soil therefrom to repair or improve some other and distant highway, if the

gravel so obtained or used was not an incident to the lawful exercise of such power to grade or improve the highway from which it was obtained. *Delphi v. Evans*, 36 Ind. 100; *Turner v. Rising Sun Co.*, 71 Ind. 548; *Aurora v. Fox*, 78 Ind. 5; *Roberts v. Sadler*, 104 N. Y. 232; *Ladd v. French*, 6 N. Y. Supp. 56; *Rich v. Minneapolis*, 37 Minn. 424: 40 Minn. 307; *Macon v. Hill*, 58 Ga. 506; *Smith v. Rome*, 10 Ga. 21; *Haas v. Evansville*, 50 N. E. Rep. 47; *Althen v. Kelly*, 32 Minn. 283.

Mr. Justice SHEPARD delivered the opinion of the Court:

The case was submitted to the jury with an elaborate charge, and twenty-eight assignments of error have been presented upon exceptions taken to instructions both given and refused. As disclosed by the special instructions asked by defendant its special plea in bar is founded upon three separate claims of public highway, any one of which the jury were told would be sufficient if established, namely: (1) By long user, survey, plat, record, and repair at public expense as provided in the Act of Congress of May 3, 1862; (2) by prescription; (3) by dedication.

1. In submitting the first ground of defense to the jury, the court gave them in charge, with some modifications, three special instructions prayed by the defendant, and refused one outright.

The several errors assigned on exceptions taken may be considered together.

In order to understand the bearing of these instructions upon the case made by the evidence, it will be necessary to note the statute law of the District relating to highways, as well as to call attention to important facts, which the evidence tends to establish.

The law of Maryland in force at the time of the cession of the District declared that the county courts "shall set down and ascertain in their records, once every year, what are the public roads of their respective counties." Act 1704, Ch. 21, Sec. 3.

The Act of Congress, July 1, 1812, empowered the Levy Court to lay out public roads, condemn lands therefor and so forth, and provided that when a road shall have been so established, marked and opened, they shall return the courses, bounds and plat thereof to the clerk of the county to be by him recorded, and it shall thereafter be taken, held and adjudged to be a public road.    2 Stat. 771.

Section 2 of the act of May 3, 1862, declares that all roads which have been used by the public for a period of 25 years or more as a highway, and have been recognized by the the Levy Court as public county roads, and for the repairs of which the Levy Court has appropriated and expended money, shall be public highways whether they have been recorded or not.    Section 3 provides that within one year from its passage, the Levy Court shall cause the county surveyor to survey and plat all such roads and have the same recorded.    In making the survey he was required to follow as near as possible the boundaries heretofore used and known for the highway and to mark the same at all angles with stones or posts.    12 Stat. 383.    This time for surveying, platting and recording was extended three years by act of February 21, 1863 (12 Stat. 658), and again for three years from July 1, 1865, by act of June 25, 1864 (13 Stat. 193).    The Revised Statutes of the District (A. D. 1874), also provide that all public roads which have been duly laid out, or declared and recorded as such, are public highways. (R. S. D. C., Sec. 246); and that every public highway shall be surveyed and platted and that a certificate of the survey and plat shall be recorded in the records kept for that purpose.    Idem, Sec. 248.

The penalty provided for the obstruction of public roads, as re-enacted in the Revised Statutes of June 22, 1874, is limited to such as had been used and recognized for twenty-five years prior to May 1, 1862, and which "were thereafter duly surveyed, recorded and declared public highways according to law."    R. S. D. C., Sec. 269.

No actual record of the road in controversy, either under the older or later laws, was offered in evidence.

There was no proof of a survey at any time unless it be inferred from the erection of the first boundary stones about 1867 or 1868. The maps found among the confused mass of old papers relating to the administration of District affairs by the governments preceding the present, were not shown to have been made from plats and official surveys of the various public roads of the District.

They are general maps of the territory showing divisions and roads, and two of them at least are such as might also have been in common use in private offices at the time.

The Boscke map of 1857 was made by a member of the United States Coast Survey who is not shown to have had any connection with the service of the Levy Court. Another— maker unknown—seems to have been made under the government succeeding the Levy Court. The third purports to be a copy, made in 1873, of a Levy Court map, the origin and date of which do not appear. Instead of proving with any certainty the required public use of the road as a highway for twenty-five years, that is to say, for a time beginning not later than May 3, 1837, and its recognition by the Levy Court, together with the appropriation and expenditure of money for repairs, before May 3, 1862, all of which were required by the statute of that date, the evidence rather tends to show a permissive use confined to the neighboring landowners and a few other persons who found it convenient to travel thereon, long after 1837. It passed through gates on each boundary of the Vineyard tract, after May, 1837, and one of these continued to stand until about the date of the conveyance to plaintiff's testator, if not later. The gate posts stood sometime after the gate had fallen in decay. Agg, the plaintiffs' grantor, changed the road at one time at his own expense. One witness testified that he had known repairs made at one time on the Harewood road, at the expense of the Levy Court, before

1861.  He does not give the date, but it could not have been earlier than 1840.  Nor does he say that the repairs were made at a point on the Vineyard tract.  Another witness called by the defendant who lived for years on the adjoining tract, had no recollection of repairs having been made on the said road at any time before the close of the Civil War.

The general use of the road seems to have begun after the beginning of the Civil War, and the consequent establishment of military camps and the National Cemetery in the vicinity.  The deed to plaintiff's testator had a descriptive plat attached which showed no road; it contained the usual covenants of warranty and made no exception of ground covered by a public road.  He and those under whom he claimed paid taxes on the whole tract without deduction of the area within the boundaries of the road.

The instructions asked conformed in the main to the requirements of the act of 1862, but contained some omissions which the court undertook to supply.  To the sentence relating to the twenty-five years' public use before May 3, 1862, he added the words, "adverse to the plaintiffs' testator and those under whom he claimed."

There was no error in this.  The instruction was incomplete without it.  Where user is relied upon to raise a right by prescription, it must not only be continuous and uninterrupted, but adverse also.  *Irwin* v. *Dixion*, 9 How. 10, 33; 3 Kent Com. 444; Washburn, Easements (4th Ed.), 150; Elliott on Roads, 137; 9 Encyc. Law, 366, 367; 19 Idem, 11, 12; *Oliver* v. *Hook*, 47 Md. 301, 311; *Cox* v. *Forrest*, 60 Md. 74, 79; *Pue* v. *Pue*, 4 Md. Ch. 386, 390; *State* v. *Green*, 41 Iowa, 693, 695; *Pentland* v. *Keep*, 41 Wis. 490, 501; *Mayberry* v. *Inhabitants of Standish*, 56 Me. 342, 351; *State* v. *Horn*, 35 Kans. 717, 721; *Plummer* v. *Ossipee*, 59 N. H. 55, 58; *Speir* v. *New Utrecht*, 121 N. Y. 420, 430.

The addition, that the record of the road must have been made prior to the first day of July, 1868, was within the

express requirement of the act of May 3, 1862, and the sup-
plementary acts extending the time as above stated.　The
twelfth instruction was to the effect that, if the jury find
from the evidence that boundary stones were erected along
Harewood road at the place of the alleged trespass by the
surveyor of the Levy Court in 1865, or thereabout, and that
thereafter the Levy Court worked and kept the road in re-
pair, then, in the absence of evidence to the contrary, the
presumption is that the Levy Court caused said road to be
surveyed, platted and recorded as a public highway in ac-
cordance with the act of Congress, requiring the same to be
done, and such presumption is not overcome by the fact that
the record of the survey and plat of said road is lost or can
not be found.　The court struck out the words—" in the
absence of evidence to the contrary the presumption is
that"—and substituted these—"it is a question for the jury
to determine whether."　The last part of the concluding
sentence following the word Congress, was stricken out and
the following substituted therefor : "And it will be compe-
tent for them to so find if all of the evidence establishes
the fact to their satisfaction, although no record of a survey
and plat of said road has been given in evidence."　As an
addition to the preceding instruction the court had told the
jury that, " the maps introduced by the defendant are not
such surveys and records as the act of 1862 contemplated,
but may be considered, together with all the other evidence
in the case bearing upon that point, in determining whether
such survey and record was made."　Clearly the presump-
tion of the existence of a record from the existence of these
maps and other facts referred to, was one of evidence for
the jury, and not of law for the court.　If any error was
committed in respect of the competency and effect of the
maps referred to, it was in favor of the defendant.　If the
maps were in fact made by the Levy Court, they were, as
the court said, "not such surveys and records as the act of
1862 contemplated."　At the same time the jury were told

that they might be considered with the evidence of the erection of the boundary stones and of the working of the road, and so forth, as tending to show the fact of actual survey, plat and record required by the law.

It is exceedingly doubtful if these maps were competent evidence for the purpose at all, for, without regard to their origin and character, there was little or no diligence shown in the search for the records of the Levy Court. The records and papers of the Levy Court have lain for years in the vault of the District offices, and no attempt seems to have been made to put them in order.

It is to be presumed that the Levy Court kept books for the record of public roads as required by all the laws in force since A. D. 1704, and it seems probable that some of these might be found if diligent efforts were made, for there has been no fire in which they could have been destroyed. The custodian of the records of the District Government was not called as a witness, and there is no evidence of inquiry of him. William P. Richards, a civil engineer, and not an officer of the District apparently, testified that at the request of the Commissioners, he had, at some date not given, made "an examination of the archives of the District to find the records and maps of the old Levy Court relating to Harewood road." He it was who produced the maps as found in that search. Whether he saw all of the old records and papers, and carefully examined them, or who pointed them out to him, does not appear. The failure, under the circumstances, to find out and produce a record of the road, afforded, to say the least, some ground for a presumption that there had never been one.

The next instruction, however, gave the defendant the title to a public highway without the necessity of the record of the road at all, and rendered the maps, as evidence of a record, comparatively unimportant. It instructed the jury, that, if Harewood road had been used by the public adversely to the plaintiffs' testator and those under whom

he claimed for twenty-five years or more before May 3, 1862, as a highway, and had been recognized by the Levy Court prior to that date, and money had been appropriated and expended for repairs thereon, then it was a public highway at the time of the alleged trespass, of the width that had been so used, although it may not have been recorded.

The necessity of adverse use prior to May 3, 1862, was an addition made by the court as in the case of the first instruction above referred to.

The limitation of the boundaries of the highway, acquired by long user only, to the lines of the ordinary use, was properly inserted in this instruction. An easement so acquired can not be broader than the use. Elliott on Roads, 136; Washburn, Easements, (4th Ed.), 135; *Plummer* v. *Ossipee*, 59 N. H. 55, 56; *Scheimer* v. *Price*, 65 Mich. 639; *West Rwy. Co.* v. *Ala. G. T. RR. Co.*, 96 Ala. 272, 279; *Ehret* v. *K. C., etc., RR. Co.*, 20 Mo. App. 251, 262.

There was no error in refusing the twenty-first special instruction asked by the defendant in connection with those given as above. In some respects it conflicted with the others as modified by the court; in others it added nothing substantial that had not already been given.

2. This brings us to the defendant's claim of public highway by prescription.

Having amended special instructions three, five and six, asked by the defendant, the court gave them in charge to the jury, in connection with number four, unamended, as follows:

"3. If the jury believe from the evidence that the place where the alleged trespasses were committed is part of the road called the 'Harewood road,' in the District of Columbia, and that said road was a public county road, generally used and recognized as such by the public for an uninterrupted period of more than twenty years prior to 1880, and adversely to the plaintiffs' testator and those under whom he claimed, under the control of and kept up and

repaired by the public authorities and used by it publicly, openly, and notoriously for all the purposes of a public highway, under a claim of right, then the jury may and ought to presume a grant of a right of way to the public over said road to the width it had been so used."

"4. It is not necessary, in order to presume a grant of 'Harewood road' to the public for a highway, that the jury should believe from the evidence that a conveyance or grant thereof was in point of fact executed. It is sufficient if the evidence leads to the conclusion that such conveyance or grant might have been executed, and that its existence would be a solution of the difficulty arising from its non-execution."

"5. If the jury believe from the evidence that the public used 'Harewood road' as a public highway whenever it saw fit, without leave of the owner and without objection from him, this is adverse, and uninterrupted adverse enjoyment for twenty years constitutes a title which can not afterwards be disputed. Such enjoyment, without evidence to explain how it began, is presumed to be in pursuance of a full and unqualified grant."

"6. The jury are instructed that it will be sufficient ground for the presumption of a grant of Harewood road to the public as a highway for the defendant to show that such a grant might have issued; and if that appears from the evidence, then if there be no facts or circumstances proved by the evidence repelling such conclusion, the jury may assume also that all that might lawfully have been done to perfect the legal title of the public to the road to the width it was actually so used for twenty years was in fact done and in the form prescribed by law."

From a general view of the changes made in the form of these instructions, we are satisfied of their correctness. It would involve a great consumption of time and space to point them out in detail and discuss their several effects, and there are no assignments of error that require us to do so.

They are all general in form, like this, for example: "The court erred in refusing to grant defendant's third prayer as asked, and giving it to the jury as modified." The rules of the court require them "to be separately and specifically stated." Rule VIII, Sec. 3, clause. (2). "Errors not assigned according to the rule of the court will be disregarded, though the court, at its option, may notice and pass upon a plain error not assigned." Id., Sec. 5.

The court next gave the second and twelfth instructions asked by the plaintiffs, as follows:

"2. In considering the evidence in this case with reference to the issue joined upon the defendant's third additional plea of common and public highway, the jury are instructed that long use never ripens into such a right of way or easement unless it be an adverse uninterrupted enjoyment of such use under a claim of right for the full period of twenty years; and the jury are further instructed that if the user is by permission, leave, license, or indulgence of the party over whose lands such use is enjoyed or can in view of all the evidence be placed upon any other footing than a claim or assertion of right, it will repel any presumption of a grant and will be what is called a precarious use, and such a precarious use never ripens into an adverse use, no matter how long it continues."

"12. If the jury believe from the evidence that there was a lane or road over the land of the plaintiffs' testator, yet if from the evidence the jury believe that travel over said lane or road originated for the accommodation of some prior owner or owners of that tract and the adjoining tract, or either of said tracts, and of those deriving title from or under such owner or owners of either or of both of said tracts, and believe that said lane or road was never surveyed, platted, or recorded as a public road or highway, as required by law, and believe that the various owners of said tract of land by *mesne* conveyances conveyed the same from one to the other, with covenants of warranty, without show-

ing, mentioning, or excepting any lane or road over the same, either in the body of any of these deeds or in plats annexed to any of them, and believe that the location of said lane or road or part thereof over the land of the plaintiffs' testator was changed by Mr. John Agg, a prior owner of said lane, for the reason that he wished it further from his house, and that he employed and paid the hands who made this change, and believe that from about 1843 to about the time of the conveyance of May 15, 1857, to the plaintiffs' testator, gates were maintained across said lane or road by the owner or owners of said tract or their tenants, and that the gate posts of such gates continued to stand for some time after the gates themselves wore out or disappeared, and stood there until some time in 1861, after the late war had commenced, and believe that taxes were assessed by the public authorities upon and paid by the owners of said land or their tenants upon said tract of land, as a whole, including land within the limits of said lane or road, and believe that acts of ownership over the land within the limits of said lane or road were exercised by the plaintiffs' testator, and believe that said lane or road was not repaired by the public authorities until after the late Civil War, or recognized by the public authorities as a public road until after the late Civil War, or if the jury believe any of these facts, then the jury are instructed that these facts or any of them which the jury may believe would tend to prove that said lane or road was not a common or public highway, and would tend to rebut any presumption of its being a common or public highway, and any and all such facts, if believed by the jury, are to be considered in connection with the other evidence in the case, and if the jury upon the whole evidence believe that said lane or road was not such a highway at the time of the acts complained of, which have been given in evidence, and was not a highway by dedication, then they should find the issue joined upon the defendant's third additional plea of highway in favor of the plaintiffs."

The court then explained to the jury that this last instruction recited merely the facts upon which the plaintiffs relied to rebut the presumption of a grant, or the idea of a road by prescription, and added:

"The instruction does not tell you that if you find those to be true that there is no road by prescription, but the instruction tells you that you are to consider all those facts recited there; that they have a tendency to rebut the idea of prescription, and that you should consider them in connection with all the other evidence in the case that tends to show prescription, and that tending against it, if there be any that is not recited in that instruction, and that is for you to say, when you have considered all those matters together, whether there is a road there by prescription. That is what that instruction means."

We are of the opinion that the defendant has no just cause of complaint against the manner in which this defense was submitted to the jury. The issues of fact were fairly, fully and plainly submitted to their finding upon instructions that appear to us to embody correct applications of the law to the whole of the evidence.

The burden was upon the defendant to establish its claim of public highway by proof of adverse and uninterrupted enjoyment by the public for a space of twenty years or more. It must be with the knowledge of the owner and under a claim of right, and not a tolerated or permissive use by him only. *Irwin* v. *Dixion*, 9 How. 10; *Oliver* v. *Hook*, 47 Md. 311; *Cox* v. *Forrest*, 60 Md. 79; *Pue* v. *Pue*, 4 Md. Ch. 387; *Smith* v. *Miller*, 11 Gray, 149; *Com.* v. *Kelly*, 8 Gratt. 632; *Taylor* v. *Gerrish*, 59 Conn. 571; *State* v. *Green*, 41 Iowa, 695; *Pentland* v. *Keep*, 41 Wis. 501; *Shellhouse* v. *State*, 110 Ind. 511, 512.

The trespass occurring in 1880 required this continuous adverse use by the public to be carried back to about June 1, 1860. We have already referred to the character of use shown until after the assembling of camps of soldiers after

1861. The public use then made and continuing until the close of the war in 1865, was of an extraordinary character, not likely to be permanent and still less likely to be resisted or even protested against. The only certain and substantial adverse claim of the District government to the road as a public highway would seem to have begun after 1865, when the road was worked from time to time, and for the first time marked with boundary stones. We are not disinclined to agree with the contention of the appellant, that, as against such open, unmistakable claim of highway, the mere protest of the owner, without some step taken to bar or contest the public use and claim in fact, would not constitute an available interruption of the use.

The owner tolerated the public travel over his land, which seemed to be of no inconvenience to him, yet he denied the existence of the public right without his consent. Grant the insufficiency of this as an interruption, but the negative fact remains of a denial of the right as against a claim of grant or dedication.

Grant that his acquiescence in repairs made by the public created a strong presumption against him, not counteracted or interrupted by the undisputed fact that upon one occasion he objected to work that had been done and the public supervisor restored the road to its former condition in compliance with his demand; and yet all this occurred within 15 years. What occurred in these 15 years may be potent circumstances bearing upon precedent conditions and lending aid by inference in their elucidation; but their direct force is necessarily limited to their beginning.

At the same time, where there is any evidence to warrant it, some consideration may justly be extended to him who in the beginning, out of kindness to his neighbors, permits them to use a private road or crossing upon his land. "A private way opened by the owners of the land through which it passes for their own uses does not become a public highway merely because the public are also permitted for

many years to travel over it." *Speir* v. *Town of New Utrecht,* 121 N. Y. 430. See, also, *Davis* v. *Ramsey,* 5 Jones Law. (N. C.), 236; *Shellhouse* v. *State,* 110 Ind. 509, 511, 512.

If such permissive use were declared the certain beginning of a public claim of right, because some other persons than those intended to be favored may have taken the advantage of the open way, the result would be to deter private persons from giving such favors to their friends and neighbors for fear of being held to have granted, or irrevocably dedicated, their land to the public use. In such case, however, the grant or dedication would not be binding, unless at the same time, the public use be held a complete acceptance on the part of the representatives of the public interest. The foregoing views would be more readily appreciated by the defendant had it been sued by someone injured in traveling the road for failure to keep it in proper repair. We think it proper, therefore, that all of the circumstances attending the beginning and growth of the use should be left to the jury, accompanied, as in this case, by a charge defining the principles of law applicable to the several phases presented thereby.

3. The next question is on the defendant's claim of public highway by dedication.

The seventh special instruction asked by the defendant reads as follows: "The jury are instructed that in order to constitute dedication of the land for the use of the public as a highway it is sufficient if its owner assented to its use by the public, and that the public actually enjoyed its use for that purpose for such a length of time prior to 1880, that the public accommodation might be materially affected by a denial of such enjoyment."

This was amended by the court by striking out the words, "if its owner assented to its use by," and inserting the following, in their stead: "If the jury find from the evidence that the plaintiffs' testator intended to give or dedicate the land claimed as a road to,"—the public.

The twenty-second instruction asked by defendant was then given, with the addition by the court of the concluding sentence therein; the whole reading as follows:

"22. The jury are instructed that the plaintiffs' testator was and the plaintiffs are estopped from asserting that Harewood road was not a public highway, if the jury believe from the evidence that the owner of the land and plaintiffs' testator, after he became owner, allowed it to remain open, intending to dedicate it for a highway, and the public used it for such a length of time that they would be seriously inconvenienced by the interruption of the enjoyment. In determining whether the plaintiffs' testator intended to dedicate the land or any part thereof, where the alleged trespasses were committed, to the public for the purposes of a road, the jury should take into consideration all the evidence showing the use made by the public of said road, the acts of the public officers, and the acts and conduct of the said testator in relation thereto."

The defendant excepted to the addition made by the court.

The court then of its own motion told the jury that the existence of a highway by dedication might be inferred in a much less time than would be required in case of prescription; that dedication is a gift requiring no deed or conveyance of any kind; that they must look to all the circumstances attending the opening and use of the road, and the acts of the owner and the public authorities in determining whether there was such an intent to dedicate; and that if there had been such an intent to dedicate it could not be revoked by the owner or his successors.

We find no reversible error in the instructions as given. Dedication may be presumed from the long continued public user for the time required in case of prescription, where there is no evidence to the contrary and where the circumstances attending such use are not inconsistent therewith, without proof of a direct public act indicating the intention; or it may arise from unequivocal acts and declarations within

14 Ct. App.—36

a recent period if followed by an acceptance on the part of the public authorities.

In the first case mentioned, what has been heretofore said in respect of the claim by prescription applies. Indeed it would seem more accurate to say that the right to a public highway, founded in continuous adverse user for twenty years or more, lies in the presumption of its former complete establishment by competent public authority, or of dedication and acceptance, rather than of a deed of conveyance. The presumption of a grant would seem properly to arise in a case where a private person claims a right in land through adverse possession and user.

In the second case, where the act or acts relied on as constituting dedication are recent, they must admit of no other reasonable inference. The owner must unequivocally dedicate his land to the use of the public and the public must accept. *Irwin* v. *Dixion*, 9 How. 10, 30; *McCormick* v. *Mayor, Baltimore*, 45 Md. 523; *Ill. Ins. Co.* v. *Littlefield*, 67 Ill. 368, 372; *State* v. *Green*, 41 Iowa, 693, 695; *Shellhouse* v. *State*, 110 Ind. 509, 513; *Cahill* v. *Clayton*, 57 Wis. 609; *City of Hartford* v. *N. Y. & N. E. RR. Co.*, 59 Conn. 250, 254; *Cemetery Assn.* v. *Meninger*, 14 Kans. 242, 245; *The State* v. *Horn*, 35 Kans. 720; *Brinck* v. *Collier*, 56 Mo. 160, 166; *Hall* v. *McLeod*, 2 Metc. (Ky.), 98; *Mayberry* v. *Inhabitants of Standish*, 56 Me. 342, 353; *Cyr* v. *Madore*, 73 Me. 53, 55.

Some of the foregoing cases apply to the first and others to the second of the two phases of the claim of public highway, by dedication and acceptance, submitted in the charge of the court, and enounce principles of law in respect thereof to which the charge substantially conforms.

4. The evidence tended to show that the width of the road as actually used was not more than twenty-five feet, and that of the excavation not less than thirty-three feet.

The jury were accordingly instructed that in the event they should find that the road had become a public high-

way through any one of the three ways claimed by the defendant, but was not of greater width at the time of the excavation than indicated by the actual use, they should find for the plaintiffs and assess such damages as shall have accrued by reason of excavation and removal of gravel beyond the boundaries so ascertained. Referring to what has been hereinbefore said in respect of the restriction of an easement of this character, founded on long user, within the boundaries of actual use, we think that this instruction was also correct.

5. There was also evidence tending to show that the excavation made left the road in worse condition for travel than before, and that the work thereof was not done under any pretense of grading and improving the said road for public use, but expressly and solely for the purpose of obtaining gravel with which to improve another and recognized public road about one mile and three-quarters distant.

Upon the issue thereby raised the court instructed the jury, substantially, that if they should find the contention of the plaintiffs supported by the evidence, then it would be their duty to find a verdict for them, assessing the damages for the injuries caused by the said excavation, and to the full extent of the value of the gravel removed therefrom, even though they should also find that the road at that point was a public highway under any one of the claims set up by the defendant.

We find no error in this charge. *Roberts v. Sadler,* 104 N. Y. 229, 232; *City of Aurora v. Fox,* 78 Ind. 1, 5, 9; *City of Delphi v. Evans,* 36 Ind. 90, 101; *Rich v. City of Minneapolis,* 37 Minn. 423; *Voliski v. City of Minneapolis,* 40 Minn. 304; *Mayor of Macon v. Hills,* 68 Ga. 595; Elliott on Roads, 523.

The court carefully explained to the jury that the right to recover for the gravel taken depended exclusively upon the fact whether the excavation had been in execution of a purpose to improve the road in controversy; if one of the

purposes of the defendant was to improve the road, or render it better for public travel, then it had the right to remove the gravel obtained from the excavation and use it on any other public road, regardless of locality, without becoming liable to the plaintiffs for any damage whatsoever.

6. The general charge clearly and correctly laid down for the guidance of the jury the rules by which plaintiffs' damages were to be assessed in the event of finding in their favor upon any or all of the issues submitted, and no objection has been made thereto.

But error has been assigned on exception taken to a paragraph of a special instruction given on behalf of the plaintiffs, which informed the jury that they might "enhance the damages by any sum not greater than the interest on the amount from August 28, 1882, when this action was brought, to the time of this trial, if the jury shall find from the evidence that such allowance would be reasonable and just."

There was no error in permitting the jury to exercise their discretion in the matter of interest. *W. & G. RR. Co.* v. *Hickey,* 12 App. D. C. 269, 275. See, also, *Dyer* v. *Steam Nav. Co.,* 118 U. S. 507.

Having found no error in the proceedings on the trial the judgment will be affirmed.

*Affirmed.*

Mr. Chief Justice ALVEY dissenting:

I have to dissent in this case. I am very decidedly of opinion that there ought to be a retrial of the case, if for no other reason, because of the undue latitude given the jury in determining the rights of the parties. And while I dissent from the result reached by a majority of the court, upon the general review of the case, I specially dissent from the opinion of the majority, wherein they approbate and support the eighth and twelfth prayers offered by the plaintiffs, and which were granted by the court below.

By the eighth prayer, the jury were instructed that if, at the time of the doing of the acts complained of, there was a *right of common and public highway in the defendant to a road of only about twenty-five feet or less in width over the land of the plaintiffs' testator,* and that an excavation in excess of the defendant's right of highway, etc., was made by the defendant, etc.; and, that, "if the defendant did the acts complained of *without the execution of its lawful powers according to law,* then, that the defendant would be liable as a trespasser for so doing, and that the jury must find for the plaintiffs, and assess such damages as the evidence shows would make them whole."

What the jury may have understood from this instruction is not free of doubt, either as to the matter of right in the *locus in quo,* or as to the measure of damages. What constitutes a right of common and public highway, is a mixed question of law and fact. The jury should have been required to find the facts, and the court, in its instructions, have defined, hypothetically, what facts, if found, would constitute a right of common and public highway. But the jury were left to determine whether there was any such right of common and public highway in the defendant, and upon their conclusion in the negative, the defendant was left in the position of and liable as an unqualified trespasser. Then, too, the jury were required to pass upon the question, whether the defendant had acquired the right to the way in question *in the exercise of its lawful powers according to law.* This was certainly a question of law, dependent upon the facts that might be found by the jury. But the proposition, as stated in the prayer, was doubly misleading, as the right of a public way may be acquired by public use, without the agency or authority of municipal power.

But I think the greatest error in this respect is to be found in the twelfth prayer. After enumerating certain facts and circumstances given in proof by the plaintiffs, but wholly ignoring any reference whatever to the specific facts and

circumstances given in evidence by the defendant, the prayer proceeds to instruct, that "if the jury believe *any of these facts*, then they are instructed that these facts, *or any of them which the jury may believe,* would tend to prove that said lane or road was not a common or public highway, and would tend to rebut any presumption of its being a common or public highway, and *any* and all such facts, if believed by the jury, are to be considered in connection with the other evidence in the case, and if the jury, upon the whole evidence, believe that said lane or road was *not such a highway,* at the time of the acts complained of, which have been given in evidence, *and was not a highway by dedication,* then they should find in favor of the plaintiffs." By this prayer the jury in effect were instructed, that any one of the enumerated facts, without regard to its probative force, if believed by them, would tend to prove that the road was not a public way, and would tend to rebut any presumption that it was a public highway. Indeed, this prayer virtually submitted the whole case to the jury, including both law and fact. For, as I have said, what constitutes a public highway, in its various modes of establishment, as distinguished from a private way, is matter of law, dependent upon facts that may be found by the jury (Co. Litt. 56 A); and so the question of dedication is one of mixed law and fact; and whether any given state of facts will constitute dedication or not is a question of law to be decided by the court. By the twelfth prayer, however, the jury were required to find not only the facts, but to determine what constituted a public highway, acquired by prescription or otherwise, as distinguished from a private way, and they were also required to determine not only the facts, but what would or would not amount to dedication of the way to public use.

It is not my purpose to go into an examination of the case at large, but only to point out some of the objectionable features in the prayers to which I have referred, as mislead-

ing to the jury.   I think those prayers ought to have been rejected.   It is impossible to say to what extent the objectionable propositions they contain may have affected the conclusions of the jury; and it will not do to say, what can not be known as a matter of certainty, that the vice of these prayers, in the contemplation of the jury, was corrected by other instructions.   It is my opinion, upon the whole case, that the judgment below ought to be reversed, and a new trial ordered.   And I am more decidedly of this opinion, because of the uncertainty upon what theory or ground the verdict was founded; whether upon the theory, supposed to be established by the evidence, that there was in reality no public right of way, or that such right of way, if it existed, had been used in excess of such public right, and so as to render the defendant liable as for a trespass.   I think the finding of the jury should have been so directed by the instruction of the court, as to preserve the right of the public in the way, if such right really exists.   The finding under the instructions given, and the judgment thereon, leave the matter in entire doubt as to how the right really stands,— whether the public has further right to use the way or not. And so the authorities of this District will be in doubt, whether they will not incur the perils of trespassers, in attempting to enter upon the way to make needful repairs, or to exercise other authority over it.   This result, I think, should have been avoided, by special direction as to the form of the verdict, in view of the manner in which the case was presented to the jury on the prayers for instruction.