SAMUEL M. RICH *vs.* CITY OF MINNEAPOLIS.

November 8, 1887.

**Public Highways—Title to Soil—Right of Removal.**— The public acquires in a street only a right of way, with the powers and privileges incident thereto. Subject to this right, the soil and mineral belong to the owner of the fee. Hence, the public easement justifies only the taking and removing of material which the process of the construction or repair of the street requires.

**Municipal Corporations—Grading Streets—Liability for Acts of Contractor.**—When a city, acting within its general powers to improve streets, makes a contract for the grading of a street, by the terms of which the contractors, in consideration of doing such grading, are to receive and appropriate to their own use all the stone in the street, and, under and in accordance therewith, the contractors proceed and remove the stone, they are the agents of the city in the premises, and the city is responsible for their acts.

**Public Highways—Abutting Land-Owners.**— The presumption of law is that the owner of the land abutting on a street is the owner of the fee in the street.

Plaintiff brought this action in the district court for Hennepin county, to recover the value of stone removed from a street in the city of Minneapolis, the plaintiff being the owner of the land abutting upon that portion of the street from which the stone was taken, and the stone having been taken by contractors engaged in grading the street under a contract with the city. The action was tried with a jury, before *Young*, J., and when plaintiff rested his case a dismissal was ordered. Plaintiff appeals from an order refusing a new trial.

*Merrick & Merrick*, for appellant.

*Seagrave Smith*, for respondent.

MITCHELL, J. It clearly appeared from the evidence introduced by plaintiff that the city of Minneapolis had no right to take these stones. It was not necessary to remove them for the purpose of grading or improving the street, as they were below the grade line. The public acquires in a street only a right of way, with the powers and privileges incident thereto. Subject to this right, the soil and mineral in a street belong to the owner of the fee, the same as if no street had been laid out. When the surface of the land is above grade line, so that in order to grade and improve the street it is necessary to remove superincumbent materials, this may be done, and probably such material may be used, if necessary, in improving other parts of the street; but the public easement justifies only the taking of material which the process of the construction or repair of the street requires. *Althen* v. *Kelly,* 32 Minn. 280, (20 N. W. Rep. 188;) *Robert* v. *Sadler,* 104 N. Y. 229, (10 N. E. Rep. 428.)

The evidence also shows, or tends to show, that the city, acting within its general powers, made a contract with certain parties to grade the street, in which, among other things, it was provided that, in consideration of their grading the street, the contractors were to receive and be permitted to quarry, take away, sell, or use as their own, all the rock in this part of the street, and that, in pursuance of and under this contract, they took out and disposed of the stone in question. Under these facts the contractors were the agents of the city in the premises, and the city responsible for their acts. *Sewall* v. *City of St. Paul,* 20 Minn. 459, (511.)

If the plaintiff owned the land abutting on the street, he presumably owned the fee in the street, such being the established presumption of the common law. 3 Kent, Comm. 432; Thomp. Highw. 26, 27. Therefore, inasmuch as the evidence showed that the plaintiff owned the lots on both sides of the street, subject to certain reservations by his grantors, he presumably owned the stone in the street, unless covered by these reservations. This action being purely one for the value of the stone removed, and the evidence introduced being directed solely to that question, of course plaintiff could not recover unless he owned the stone. He acquired title to the lots on one side of the street from one Rogers. It appears that these lots

were subject to a prior lease from Rogers to one Aronson, who had a right to remove the stone during the term of his lease, and was to pay Rogers a certain price therefor, but the date or duration of the lease was not proved. On the same day that Rogers conveyed to plaintiff, the parties executed a supplemental contract, (Ex. D,) in which it was agreed that whatever stone Aronson did not remove from the lots during the term of his lease, plaintiff was to pay Rogers for at the rate of 35 cents a perch. This agreement further provided as follows: "It is mutually agreed that all of the rock in and upon said lots is now and shall be the property of said Mary P. Rogers; and all moneys arising from the quarrying and sale of the same, under the mentioned lease to B. Aronson, shall be paid to her the same as if this sale (the conveyance of the lots) had never been made. In other words, the said Samuel M. Rich, in buying the lots mentioned, agreed that said Mary P. Rogers should retain the lease to B. Aronson, and all moneys arising therefrom, and all rock remaining in and upon said lots at the termination of said lease." This amounts clearly to a reservation of all the rock in the lots, which would include that to the centre line of the street, subject to the public easement. The only possible interest which plaintiff could have in the rock was the obligation to take at a fixed price, at the end of the Aronson lease, whatever, if any, was left, and it did not appear that any such contingency had or ever would occur. The plaintiff therefore made out no right of recovery for the rock taken from that half of the street.

Plaintiff acquired the lots on the other side of the street under a conveyance from one Henry Downs, which contained the following reservation: "Excepting and reserving to the said Henry Downs, his heirs or assigns, the ownership to the stone imbedded *in said land, and* the right to quarry and remove the same from Nicollet street, adjoining *said land,* to a distance, at most, of twelve (12) feet *into said street,* before August 1, 1887." This is somewhat obscure and ambiguous. If the first clause stood alone, it would undoubtedly amount to a reservation of the stone in all the land conveyed,—the street, as well as the land outside the street line. But, in the absence of any evidence of extrinsic facts tending to throw light on its meaning, we think that the fair construction of this reservation, and

the only one that will reasonably give effect to the whole of it, is that the term "*said land*" refers to the lots exclusive of the street, and that the first clause reserves merely the stone in the lots proper, and that the intention of the second clause was to reserve in addition the right to remove the stone out in the street to the distance of 12 feet from the street line, any time before August 1, 1887. As Nicollet street is 60 feet wide, this would leave a strip 18 feet wide, the stone in which, not being reserved, would pass by the deed to plaintiff, subject only to the rights of the public. For this much, at least, the plaintiff would be entitled to recover. It is true, he did not prove what proportion of the stone was taken from that strip, but he was, under the evidence, entitled at least to nominal damages. For this reason the court erred in dismissing the action.

Order reversed.