## MATTHEW VILISKI *vs.* CITY OF MINNEAPOLIS.

### March 22, 1889.

**Stone Quarried in Street by Contractor — Liability of City.**—A city contracting for and authorizing the quarrying and disposal of stone from a ledge in a street, and below the grade thereof, for unauthorized purposes, becomes liable to the owner of the soil for the value of the stone as it lay in the ledge.

**Same—Right of City to Remove and Sell Stone.**—When it becomes reasonably necessary, for purposes connected with the use or improvement of a street, or for the enjoyment of the public easement therein, to have earth or rock excavated and removed therefrom, and where it is impracticable to commit to the owners of the soil the work of excavation and removal, the public authorities may do this, unembarrassed by claims of private ownership, and may dispose of the material which they are required to remove, without accountability to the owners of the soil. This is properly incident to the public easement.

**Same—City not Liable for Necessary Removal.**—A city, for the sole purpose of securing the construction of a sewer in a street, entered into a contract with a person to the effect that he should take out the stone the whole width of the street, and several feet in depth below the grade, construct the sewer, and refill the street to the original grade. As compensation for the construction of the sewer, the contractor was to have the stone so removed. *Held* that, as to so much of the stone as it was reasonably necessary to remove for the construction of the sewer, the owner of the soil had no cause of action.

**Same—Stone Unnecessarily Removed.**—The city had no right to thus appropriate to the payment of the contractor the stone which it was not necessary to remove for the construction of the sewer.

Appeal by defendant from an order of the district court for Hennepin county, *Hicks*, J., presiding, refusing a new trial after verdict for plaintiff.

*Seagrave Smith*, for appellant.

*Corrigan & Bradish*, for respondent.

DICKINSON, J. This action is for the recovery of the value of a large quantity of stone, quarried by one Patterson from Thirteenth

avenue, between Third and Fifth streets, in the city of Minneapolis, and appropriated by Patterson to his own use.    The fee of the land where the stone in question was quarried was, with the fee of the adjacent lots, in the plaintiff and in certain other persons, who have assigned to him their causes of action for the acts complained of. The acts of Patterson here in question were done pursuant to a contract between him and the city, the body of which is set forth in the complaint, and the making of which is admitted.    The time for the performance of this contract by Patterson appears by the complaint to have been subsequently extended, by the mutual consent and agreement of the contracting parties, to November, 1887.    This is also, as we construe the answer, admitted.    The acts complained of were done prior to that date.    The written contract of the city with Patterson in terms permitted the latter to excavate, have, and carry away all the rock in Thirteenth avenue between the other streets above named; in consideration of which permit Patterson agreed to excavate and carry away all the rock, as before designated, and, after the rock had been excavated, and as the work should progress, to construct with such rock a covered stone drain through the avenue, within the same limits, and also to refill the avenue to the original grade of the same.    The agreement further stated that the same was made on the part of the city for the purpose of grading this avenue, and of causing the removal, at the least expense to the city, of the material necessary to be removed in such grading; and that Patterson should have no compensation, except the right to use and dispose of as he might see fit any surplus rock so excavated and not needed for the drain.

It appeared upon the trial of the cause that the grade of this avenue had never been established by the city council, there having been established only what is termed a "preliminary grade" by the city engineer, for the purpose of carrying on public improvements; that the rock which is the subject of this action had been taken from below this temporary grade; that the ledge thus excavated and removed was, in depth, from the surface of the soil, some nine or ten feet; that (as appears from the testimony of Patterson that he fulfilled the contract) *all* the rock in the street to that depth, and to the whole

v.40M—20

width of the street, was taken out, and so much of it as was not required for the sewer was used by Patterson for his own purposes; and that the excavation was then refilled to within about two feet of the original surface of the ground, as directed by the city engineer.

We think that it appears conclusively from the case that the removal of this stone was not for the purpose of grading this street; for the contract provided for *refilling* by the contractor after all the stone should be removed, as was in fact done, although the excavation was not refilled quite to the original level. It view of what was by the terms of the contract to be done, the statement embodied in it as to the reasons or purposes in view cannot be here accepted as showing that the grading of this street was one of the purposes for which the stone was to be removed. We consider, also, that the conclusion is to be drawn from the case that the rock was excavated the whole width of the street, not because that was necessary in order to construct the sewer at the proper level, but because the city could thus secure the construction of the sewer without expense, the contractor being compensated for doing the work by the large quantity of stone thus secured for his own use. The right of the city to dispose of the stone in the manner above indicated and the measure of the plaintiff's damages are the principal questions involved in this case. We have not hitherto been required to determine such questions, under the circumstances here presented.

In considering the principles to be applied in the determination of the case, a distinction is to be observed, depending upon the fact as to whether the excavation and removal of the material in question is reasonably necessary on the part of the city for purposes properly connected with the public easement, or, not being of that character, is to be deemed an unjustifiable invasion of the rights of the owner of the soil. Accordingly we separate the subject of this action into two parts, and will first consider the case with regard to so much of the stone in question as was not reasonably necessary to be quarried for the purposes of the construction of the sewer.

As has already been intimated, the case does not show a justification for the quarrying of the stone through the whole width of the street, and far below the surface. It was not necessary for the grad-

ing of the street, for no grade had been established different from the natural surface of the ground, nor is it claimed to be even probable that any other grade will ever be required. The case does not call for a consideration of the question as to whether the city might not excavate to a greater width than was necessary for present purposes, in anticipation of future improvements rendering that necessary. The case discloses no other purpose, either present or prospective, than the construction of this sewer. The claim that this was the most economical way for the city to secure the construction of the sewer ignores the rights of the owner of the soil. The acquisition of the easement does not include a right on the part of the public to use or dispose of the material found within the lateral limits of the street, except so far as may be reasonably necessary for the full enjoyment of the easement, or properly incident thereto. The quarrying and disposal of stone from below the street grade, the same not being necessary for purposes connected with the use or improvement of the street, is not included within the rights acquired by the city when a street is established over the land of an individual, and he has a right of action therefor. *Rich* v. *City of Minneapolis,* 37 Minn. 423, (35 N. W. Rep. 2;) *Althen* v. *Kelly,* 32 Minn. 280, (20 N. W. Rep. 188.) It may be that if the city had not thus appropriated the stone in question to compensate the contractor for constructing the sewer, and if only so much stone had been removed as was reasonably necessary for putting in the sewer, a considerable expense would have been incurred, which might have been chargeable upon the adjacent property by special assessment. This probably would have been authorized by provisions of the charter prescribed for such purposes. But the fact that the necessity for a legally-authorized assessment has been avoided by the course pursued by the city is no justification. It had no power to summarily, and without statutory authority or legal proceedings, seize the property of the owner of the soil, whether upon his private premises or within the limits of the street, and appropriate it to the payment of the expense of constructing the sewer, nor could it authorize such an appropriation by another. Hence, as to so much of the stone in controversy as it was not reasonably necessary to disturb for the purposes of the improvement

undertaken,—the construction of the sewer,—the plaintiff had a right of action, unless it had been voluntarily relinquished.

The proper measure of damages should be distinctly settled, so far as seems necessary for the purposes of this case. There is a marked tendency in the modern decisions, in awarding damages for the conversion of property, where by the acts of the wrong-doer the property has been greatly increased in value, but where the defendant is not chargeable with intentional wrong, or with such conduct as merits the awarding of punitory damages, to apply the rule of actual *compensation* for the injury or loss suffered, without allowing the plaintiff to profit by the valuable service which others have bestowed upon the property. 3 Suth. Dam. 509, *et seq.*, and cases cited. Without here indicating an unqualified acceptance of that rule, we only decide that it should be applied in cases like that under consideration, whenever the action of the public authorities is not characterized as intentionally or grossly wrongful. The reasons in favor of this rule in such cases are as applicable as in actions between individuals, as in *Hinman* v. *Heyderstadt*, 32 Minn. 250, (20 N. W. Rep. 155;) *Whitney* v. *Huntington*, 37 Minn. 197, (33 N. W. Rep. 561.)

There is no claim made that the city is chargeable with any graver fault than ignorance of its legal rights, and the application of the rule to such a case is to allow as damages the value of the stone as it lay in the quarry. And this estimate should be based upon the assumption that the owner had the right to enter upon the street and take out the stone. Of course, he has not that right, unless special authority be conferred upon him; but the city ought not, in disregard of his property rights, and without legal justification, to quarry the stone, or authorize others to do so, and then, having thus secured the benefit of the full value of the stone, unembarrassed by the existence of the street over which it had control, defeat a recovery by the owner of the soil of more than nominal damages, by the plea that it would not have allowed *him* to quarry the stone from the street. The city should not be allowed to thus take advantage of its own wrong.

We come now to consider the rights of the owner of the soil as to stone within the street which it becomes necessary for the public to

excavate and remove in the exercise of its rights connected with the easement. This embraces so much of the rock in question as it was reasonably necessary to quarry for the purpose of constructing the sewer. As to the right of the city to do this, there can be no question. As to such material the ordinary privileges of ownership became subordinate to those secured by the public, when the land was devoted to the purposes of a street, including all the uses properly incidental thereto; and, for whatever property rights the owner may have then been deprived, he is to be presumed to have received adequate compensation, if the land was taken under the power of eminent domain, or he relinquished all right to compensation if he voluntarily dedicated the land to these purposes. It is apparent from an examination of the authorities, that courts have experienced no little difficulty in stating and in adjusting the rights of the public and of the landowner, respectively, in such cases. The decisions are neither uniform, nor are the reasons which have been assigned for them always satisfactory. After a careful consideration of the subject, we have been led to the conclusion that this proposition is in accordance with reason, and presents the only practicable rule for the determination of the rights of parties, viz.: Whenever it becomes reasonably necessary, for purposes connected with the use or improvement of a public street or for the enjoyment of the public easement therein, to have earth or rock excavated and removed therefrom, and where it is impracticable, in view of the public purposes to be accomplished, to commit to the owners of the soil the work of excavation and removal, the public authorities may do this, unembarrassed by claims of private ownership and right of disposal. The public may dispose of the material which it is required to remove in such manner as may be most for its interest, without accountability to the owner of the soil therefor. Whether there may be exceptions to this, under peculiar circumstances, as where valuable minerals may be found in the street, we do not decide. Where the necessity for removal by the public authorities exists, it would seem that the right to dispose of the material so necessarily removed is a natural, if not necessary, incident of the right to excavate and take it away. To a certain extent this is so considered in all of the decisions upon the subject. Thus it is a

familiar rule of law that the earth and stone taken out of a street by the public authorities for the purpose of its improvement may be used by them for street purposes elsewhere, and of this the owner of the soil cannot complain. It would be difficult to assign a reason for this which would not also support the right of the public to use such material for any other public purpose, unless it be the reason that ancient usage more clearly sanctions this limited use than it does the general right to dispose of whatever the public is obliged to remove.

The principle announced, that the city may dispose of what it is required to remove, and the difficulty in applying any other rule, may be made more clear by a consideration of the circumstances of this case. It is apparent, without proof directed to that point, that when the city undertook the construction of a sewer through this street, many feet below the surface of the ledge, it would have been impracticable to commit to the adjacent proprietors the work of quarrying and removing the stone, each in front of his own premises, and for the width which was necessary for that purpose—probably a very few feet—on either side of the centre of the street. The objections to such a mode of carrying on public work of that kind it is hardly necessary to enumerate. The necessity for having the work done with expedition and without default; for unity of design and action; for the selection of proper persons and methods for blasting and removing the stone, both for the safety of the public in the use of the street and of those who may be employed in the work; for selecting and reserving from removal such part of the stone as might be needed for construction of the sewer; and for carrying on at once the quarrying of the stone, the construction of the sewer, and the refilling of the excavation, which latter work could not be imposed upon the adjacent proprietors,—suggests sufficient reasons why each 50 or 60 feet in length of the work should not be assigned to different parties, (the lot-owners on each side of the street,) who might or might not undertake the labor if it were committed to them. Indeed, it is not probable that all if any of the proprietors would or could perform such a task, if allowed to do so. The city had to do this, either by the direct employment of labor or by contract, and must be allowed to carry on the work unembarrassed by the claims of adjacent pro-

prietors as to their ownership of the stone and their right to control its disposal. In taking out the stone, and in using what was necessary for the sewer, it exercised an unquestionable right, and did no wrong to the owner of the soil. If, when the excavation was refilled with stone or earth, some stone remained, it must have been disposed of in some way, and not left to incumber the street. It would be difficult, if not impossible, for the city, after it has completed such a work, to assign to the respective owners of every 50 or 60 foot lot their proper proportion of the remaining mass, and secure its proper and prompt distribution and removal by them. If the stone is to be deemed their property, the city cannot make any authoritative division or distribution of it, and it would very likely become the subject of controversies which would prevent a prompt and complete removal of it from the street. In brief, we are of the opinion that when, under such circumstances, it becomes necessary for the city to excavate and remove such material, it may also dispose of the same, that being properly, and in such cases necessarily, *incident* to the power of taking, using, and removing.

We have not assumed to state the law as to the removal of trees standing in the highway. It may be that in general it would be practicable to allow adjacent proprietors to remove them if they shall elect to do so, when removal becomes necessary. It must be conceded that there are few authorities directly supporting the conclusions expressed in the latter part of this opinion. We, however, refer to *Upham* v. *Marsh*, 128 Mass. 546. In that case the proper authorities, the highway surveyors, had authorized the defendant, who was one of the surveyors, to take earth from the highway where it crossed the plaintiff's land, and to deposit it upon his own (the defendant's) land. This was done as the best mode of lowering the grade of the highway and disposing of the material removed. The duty of removing the material was regarded by the court as implying a right to deposit it elsewhere, and it was considered that what was done was reasonably necessary and incidental to the convenient and proper execution of the work of repairing the road. "It follows," says the court, "that the plaintiffs lost all title to the soil when so removed from land belonging to them, and they cannot maintain an action for

its conversion." It seems to us that a more accurate statement of the proposition, but leading to the same result, would be that the owner's title became subordinate and subject to this right of the public, as an incident of the easement, when the land was originally condemned or dedicated for the purpose of a highway, and the necessary removal of the soil at a subsequent period divested him of no property right which he then had.

The result in this case is that a new trial must be granted, for the damages assessed—about $1,100—were for the whole of the stone in controversy. The amount unnecessarily removed was not shown by the evidence.

Order reversed.