**CAMPBELL, et, Plaintiffs, v. MONACO COAL MINING CO., et, Defendants.**

Common Pleas Court, Belmont County.

No. 11414.    Decided April 26, 1948.

482

Joseph C. Allen, Columbus, A. G. Lancione, Bellaire, for plaintiffs.

C. J. Ruffing, Norwalk, Thornburg & Lewis, St. Clairsville, Michener & Dankworth, Bridgeport, for defendants.

## OPINION

By BELT, J:

Trial by jury was waived by the parties herein and the cause submitted upon the pleading and evidence to a court of three judges selected in accordance with the provisions of §11421-1a GC.

Plaintiff alleges in their second amended petition that they are the owners in fee simple of certain described real estate in this county containing 7.81 acres and that the defendants entered into and upon said premises and took, carried away and unlawfully converted to their own use and disposed of 30,000 tons of coal, the property of plaintiff, to their damage in the sum of $135,000 for which sum they pray judgment.

The defendant, A. J. Baltes, Inc. and The Monaco Coal Mining Company, filed separate answers, denying the allegations of the petition and pleading affirmative defenses which will be referred to in the statement of facts.

The facts, as shown by the evidence, are as follows:

Plaintiffs are and were, at all times referred to in the pleadings, the owners in fee simple of the real estate described therein.

It further appears that on September 12, 1946, the Director of Highways of the State of Ohio appropriated an easement for highway purposes on and over said real estate and filed a proceeding in this court to determine compensation and damages, at the same time making a deposit of $16,000 as the Director's offer for the lands taken and damages to the residue. It was subsequently determined by the court that said proceedings were regular and that it was necessary to appropriate an easement for the purposes aforesaid. Before the cause came on for trial, the parties, by negotiation, reached an agreement as to compensation and damages in the sum of $20,000, as shown by the journal entry duly approved and filed therein. Said entry reads in part as follows:

"It appearing to the court that the owners of the property and premises appropriated in this action have agreed with Perry T. Ford, Director of Highways of the State of Ohio, upon the amount of compensation and damages due said owners by reason of said appropriation, and have agreed to accept and withdraw the amount of Twenty Thousand Dollars ($20,000.00), deposited in this court by the said Director of Highways in full payment thereof, and have released all claim for further compensation or damages resulting from the construction of said highway improvement or from the appropriation of the property and premises described in the resolution and finding of Perry T. Ford, Director of Highways, a copy of which was duly filed in this court.

It further appearing to the court that the said property owners are to retain title to the buildings, and remove said buildings, down to the foundation level, clear of property appropriated for highway purposes on or before November 1, 1946. It is further agreed that Two Thousand Dollars ($2,000.00) shall be withheld by the court until such time as removal of the structure from the property appropriated has been completed and certification thereof furnished the court by Perry T. Ford, Director of Highways, provided however, the property owners fail to remove said buildings on or before November 1, 1946, the Director of Highways shall have the right to move said buildings from the property appropriated at the expense of the property owners, and in which event, the court shall reimburse the Director of Highways for his necessary expense in effecting the removal of said buildings from the property appropriated. The said reimbursement to be made from the Two Thousand Dollars ($2,000.00) withheld by the court, and the remainder of said Two Thousand Dollars ($2,000.00), if any, shall be paid to said property owners.

It is further ordered, adjudged, and decreed that an easement for highway purposes in, over and upon the said premises described in the resolution and finding of Perry T. Ford, Director of Highways, a copy of which was duly filed in this court, is duly vested in the State of Ohio free and clear of all claims of the owners of said premises, except that title to the buildings now located on the said premises shall be retained by said owners, to-wit: Howard J. Campbell, Dollie Campbell, their heirs, administrators, executors or assigns."

A plat was filed by the Department of Highways in said proceeding, showing the boundaries of the tract and other data, which plat also contained a cross section of the proposed improvement at two different stations, viz: Stations 275 and 281. The land appropriated was at the apex of a narrow ridge sloping downward on both sides for a considerable distance, the depth of the proposed cut through this ridge at the highest point, being approximately where the buildings were located, was to be ninety-four feet. At station 275 it was fifty feet and at station 281, sixty-two feet. The two cross sections showed the transverse surface of the lands at those points. The cross section at Station 281 shows a strata marked on the plat as "waste" approximately six feet in depth, while Station 275 said "waste" strata is not shown, for the reason that the surface at that point was below the strata. This so-called "waste" strata was the seam of coal know geologically as "No. 8 A", which seam is found in all parts of Belmont County approximately eighty feet above the Pittsburgh or No. 8 seam, and is mined in many parts of the county, including the neighborhood of this tract of land. In fact, one of the plaintiffs testified that there was a mine in the "No. 8 A seam" in the vicinity of this tract. The term "waste" in engineering parlance, insofar as road construction is concerned, means that the "waste" strata as shown was unfit for use in road building and therefore must otherwise disposed of; which meant in this instance that it was to be deposited in some place provided by the contractor outside the boundaries of the roadway. This coal seam was at a depth of about fifty feet below the maximum elevation of said tract and disappeared altogether on the lower levels at each side of the ridge in question. Said seam of coal is a regular formation found at substantially the same elevation in all of Belmont County and its existence and location is a matter of common knowledge. The seam is operated by both the deep mining and striping methods in many places in the county. Prior to the time of this appropriation, several sales of coal underlying

land in the general neighborhood of this tract had been made and the tract itself had been core drilled by the Highway Department prior to filing the appropriation proceeding, to ascertain the composition of the various formations to be excavated. Plaintiff, Howard J. Campbell, in response to an inquiry by the court testified that he had knowledge of the existence and location of said seam of coal but that no coal had been sold north of the No. 40 highway in that vicinity and that from a mining standpoint, it was not considered of value, which statement is borne out by the facts in this case. It was a matter of common knowledge, however, that the strata of coal was within the depth of the excavation.

The Highway Department entered into a contract with the defendant, A. J. Baltes, Inc., to make this improvement and in so doing it was agreed by the parties hereto that the defendant, A. J. Baltes, Inc., removed 9,169.65 tons of coal from this seam in making the excavation in accordance with the road plan, as shown on the plat heretofore mentioned. The major portion of this coal was sold by said defendant company to the other two defendants herein at an average price of approximately $1.25 per ton. The total amount received by the defendant, A. J. Baltes, Inc., from such sales was $11,099.52.

One of the engineers of the State Highway Department testified that after the contractor, A. J. Baltes, Inc., had excavated to the top of said seam of coal it advised the Highway Department of such fact and sought instructions as to the disposition of said coal. The Highway Department advised that it was the duty of said contractor to remove the coal, together with the overlying and underlying strata contiguous thereto and waste the same; that is, that said strata was not to be used in filling the highway at other points. Further, the Highway Department advised that it had no interest in the manner of disposition of said product designated as "waste." The contractor thereupon removed the waste product over and contiguous to said coal and deposited said product in a waste dump provided by him off the boundary of said highway, and then proceeded to remove the coal and sold the same to the other defendants and other parties. He thereafter removed the underlying contiguous strata and deposited said strata also upon the refuse dump.

From the above statement of the issues and the evidence, the court hereby makes its finding of facts, as follows:

FIRST: That an easement for highway purposes was duly appropriated on and over the premises described in the petition for which plaintiffs received the agreed compensation of $20,000.

SECOND: That the location of said seam of coal was shown on the map filed in the appropriation proceeding and denominated thereon as "waste."

THIRD: The "No. 8 A seam" of coal is a regular seam underlying the surface, except where it crops in the valleys, of substantially all of Belmont County and its approximate location, by reason of mine operations throughout the county is a matter of common knowledge and plaintiffs had actual knowledge that said seam of coal was being operated, and had actual knowledge of the existence and location of said vein underlying the land described in the petition, and knew from the data contained in said appropriation proceeding hereinbefore referred to, and from actual knowledge of the land in question, its elevation and contours, that in the construction of said highway an excavation would be made on the land; that a part of said land was underlaid with said seam of coal, and that in making said excavation, it would be necessary to remove the said seam.

FOURTH: That no more coal was excavated from said right of way than was actually necessary to be excavated for the purpose of constructing said highway in accordance with the plans and specifications therefor, as shown by the plat filed in the appropriation proceedings.

FIFTH: That 9,212.65 tons of coal were salvaged from said excavation; that in order to salvage the same, the contractor removed the contiguous overlying formation, which. as a matter of common knowledge consists of shale and slaty substances, and wasted the same, as required by its contract with the Highway Department; that said contractor then removed said coal as a separate operation and thereafter removed the contiguous underlying strata and deposited the same as waste material; that the salvaging of said coal by the contractor necessitated and required three separate operations; whereas, if the coal had not been removed by that method its value would have been destroyed by excavating the same in the ordinary way by the use of a power shovel, which would have mixed said coal with shale, earth and other substances, rendering it unfit for any commercial use and of no value whatever.

SIXTH: That the coal was of little or no value in place, by reason of its depth below the surface and could not have been profitably mined by normal mining operations even when considered in connection with other contiguous lands of plaintiffs, for the reason that there was not sufficient coal within a profitable mining depth to warrant its removal in

a commercial way, had it not been for the excavation made by the Department of Highways.

SEVENTH: That the plaintiffs made no exception or reservation of said coal, nor did they make claim of ownership thereto or demand or request either the contractor or the Highway Department that said coal be salvaged for their benefit.

EIGHTH: That the contractor incurred substantial additional expense in salvaging said coal, which expense would not have been incurred had the coal not been separately removed and disposed of; but no estimate of said additional expense is shown by the record.

NINTH: That the value of said coal was wholly created by reason of the excavation made in the construction of said highway.

TENTH: That it was not within the contemplation of either the plaintiffs or the Highway Department at the time of the settlement of the appropriation proceedings that plaintiffs would make a claim for additional compensation over and above the $20,000 paid by reason of the removal of said coal.

From the above statement of facts, the question is presented as to what interest, if any, the plaintiffs had in this seam of coal after the same was removed and salvaged in the process of excavating for this roadway.

The coal, upon the removal of the same from its natural bed, immediately became personal property.

Concededly, there were no contractual duties or obligations between the plaintiffs and A. J. Baltes, Inc. If said company had excavated the coal with the stone, slate and earth and had deposited all of said excavated materials on the waste dump no liability would have arisen in favor of plaintiffs because of failure to salvage the coal.

It must be conceded at the outset that the contractor, A. J. Baltes, Inc., acquired no property interest or right in and to said coal, either in place or when excavated, solely by reason of its contract with the Department of Highways, and that the property right therein, after excavation, was lodged either in the plaintiffs or the Department of Highways and if the Department of Highways was obligated to salvage said coal for the benefit of the owners, then the contractor acquired no property interest therein or right thereto and had no right to dispose of the same. Whatever right the contractor, A. J. Baltes, Inc., had to said coal arose by virtue of its contract with the Director of Highways coupled with the department's instructions to the effect that it was necessary

for the contractor to remove the coal and that the department had no interest in its disposition.

Many legal questions have arisen as to the rights, interests and liabilities as between a public agency and the owners of the fee in making improvements under an easement grant.

A composite definition of the rights and liabilities as between the owner of the fee and the public has been attempted by the text book writers, resulting in a mere general statement in an effort to formulate a rule that would be all inclusive.

The books are replete with such general statements as the following:

"Where the fee of the highway is in the abutting owner, he owns the soil, rock, gravel and other materials within the limits thereof, **except insofar as the same may be needed in constructing, improving or repairing the way.**"

"**The public easement justified the taking of only such material as the process of the construction or repair of the street requires and necessarily compels to be removed,** and therefore, the taking of such materials, not for the improvement of the highway at the point from which they are taken, but merely for use in improving other portions thereof, is unjustifiable." (Emphasis ours.) ·

"Where he owns the fee, the abutting owner is the owner of the minerals upon or under the surface of the highway, and of all mines and quarries on the land over which the highway passes."

25 Am. Jurisprudence, Sections 140, 141, 142 at pages 436-438.

"Title to the soil and all the profits thereof, such as trees, herbage and mines and quarries, remain in the owner, who may exercise all rights of ownership therein **consistent with the existence of the easement.** Notwithstanding the laying out of the highway and the condemnation of the land to the use of the public for travel, the title to the soil, and all the profits thereof **consistent with the existence of the easement,** remain in the original owner." (Emphasis ours.)

39 C. J. S., pages 1075-1077.

The specific question in this case is, where it is necessary to remove minerals in making an improvement, does the land owner have any property right or interest in said minerals, where they have not been excepted from the easement grant or made the subject of contract between the parties, when the owner knew of the existence of the minerals

and the necessity for removal of the same in making the proposed improvement, as provided for by plans and specifications therefor.

A number of Ohio cases have been referred to and examined, among which are **Phifer v Cox 21 Oh St 248; Railroad Company v Williams 35 Oh St 168; Platt v Pennsylvania Company 43 Oh St 228; Schaaf, et al. v Cleveland, Medina and Southern Railway Company 66 Oh St 215,** and **Ohio Bell Telephone Company v The Watson Company 112 Oh St 385.** None of these cases are decisive of the issue here presented. The same reasoning is adhered to in all these cases, which is well stated in **Schaaf v Railway Company, 66 Oh St 215, at page 229,** as follows:

"As between the public and the owner of land upon which a common highway is established, it is settled that the public has a right to improve and use the public highway in **the manner and for the purposes contemplated at the time it was established.** The right to improve includes the power to grade, bridge, gravel or plank the road in such a manner as to make it most convenient and safe for use by the public, for the purposes of travel and transportation in the customary manner, which is well understood to be by the locomotion of man or beast, and by vehicles drawn by animals, without fixed tracks, or rails to which such vehicles are confined when in motion. These constitute the easement which the public acquires by appropriating land for the right of way for a highway, **and these, in legal contemplation, are what the owner is to receive compensation for when his land is appropriated for this purpose.** The fee of the land remains in the owner, he is taxed upon it; and when the use or easement in the public ceased, it reverts to him free from incumbrance." (Emphasis ours.)

**Sec. 1178-2 GC,** provides that:

"Title to property purchased or appropriated by the Director, for other than temporary purposes, shall be taken in the name of the State by easement deed in accordance with forms to be prescribed by the attorney general."

A pertinent inquiry at this point is what are the extents and limitations of the easement grant?

It is generally held that an easement for highway purposes is for passage over the land with the reasonable necessary

incidental powers and privileges to grade, repair and maintain the way. In other words, the public acquires in a street or highway a right of way with the powers and privileges incident thereto. .

The general rule as announced by "Giauque" in his work entitled "The Law of Roads, Ditches, Bridges and Water Courses" is that the owner of the fee retains the exclusive right to the trees, shrubs and herbage growing on the land and to the minerals underneath for all purposes **not incompatible with the right of way.** His discussion is found on pages 503, 504, 519, 520 and 521 of said work. (Emphasis ours.)

The reported cases, including those cited by counsel, may be classified as follows:

First: It is recognized as a general principle that the materials, whether earth, gravel or mineral within the limits of a public way, belong to the owner of the fee and that he may remove the same so long as he does not interfere with the public easement and improvement.

Second: That the materials may be used by the public authority as a matter of right for improvement or repairs, if needed. The cases are not in harmony as to the scope of this right, some holding that the earth may be taken from any part of the highway and used at another point or on any other public way, while other cases apply a much more restricted rule.

Third: That the soil cannot be removed unless the removal is itself the needed repair or improvement.

Fourth: When the materials are removed for lowering the grade, or to render the way more convenient for travel, the ownership of the materials so removed is in the public and it may dispose of the same at its option.

Nichols in his work entitled "The Power of Eminent Domain" in 1909 Edition, Section 78 at page 89 gives the rule with citations of authority as follows:

"It is well settled that earth and gravel within the limits of a public way belong to the owner of the fee and he may dig up and remove the soil if he does not thereby interfere with the exercise of the public easement. But the right of the public to use the earth for repairs upon the way is paramount, and if it is needed for that purpose, the owner may be enjoined from removing it. It is a general, but not a universal rule, that the public may take earth from any part of a highway to repair the same way at another point or to use on any other public way within the same jurisdiction. In Indiana the right of removal is limited to highways within

the same plan of public improvements, and it is held in some states that the soil cannot be removed unless the removal is itself the needed repair. When earth or stones are taken away from a public way for the purpose of lowering the grade, or because their presence in the way renders it unsafe or inconvenient for travel, the ownership of the material so removed is in the municipality, and it may dispose of it as it sees fit; but when the material is not removed to improve the way or to be used for repairs on other ways, it is the property of the owner of the fee and cannot be disposed of by the town for its own pecuniary advantage."

The cases cited by the author amply support the text, among which is the case of Viliski v. City of Minneapolis, 41 N. W. 1050. In that case there was a written contract between the city and a contractor, which permitted the contractor to excavate and appropriate to his own use certain rock in the street. In consideration of which, the contractor agreed to carry away all the rock and after its removal to construct a covered stone drain and rebuild the street to its original grade. He was to receive no compensation other than ownership of the materials excavated. Some of the rock was taken from below grade and was not required to be removed for the purpose of constructing the sewer. The court limited the right of the public only to so much of the stone as was reasonably necessary to be removed for the construction of the sewer and for all other stone removed the municipality was charged with liability. The second syllabus reads as follows:

"When it becomes reasonably necessary, for purposes connected with the use or improvement of a street, or for the enjoyment of the public easement therein, to have earth or rock excavated and removed therefrom, and where it is impracticable to commit to the owners of the soil the work of excavation and removal, the public authorities may do this, unembarrassed by claims of private ownership, and may dispose of the materials which they are required to remove, without accountability to the owners of the soil. This is properly incident to the public easement."

The same rule was announced in the case of Rich v. City of Minneapolis, 35 N. W., 2.

In the case of Upham v. March, 128 Mass. 546, the court held as follows:

"But it is contended on the part of the plaintiffs, that, as neither the town nor any officer of the town had any right to appropriate the soil and material belonging to them for any purpose other than the repair of the way, the defendant must be liable for the soil deposited upon his land and used by him. It is true that, under the pretense of repairing highways, town officers would have no right to take the soil of the landowner and by sale or otherwise appropriate it to their own sole use. That is not this case. Here the right to remove the plaintiffs' soil upon the facts stated is undoubted. It was not only the right, but it was the duty, of the surveyor to remove it; and removal implies the right to deposit it somewhere else. It has never been decided that it is necessary to the right of removal from one place that the material should be needed, or should be subsequently used, for repairs at some other point. The material itself may be wholly unfitted for such use, or may not be needed at a place to which it would be taken without disproportionate expense. It is not enough that, in the opinion of others, the soil in question might have been advantageouusly used in repairing this road at a more distant point. The judgment of the surveyor upon such questions must be of controlling weight. And, upon the whole case, we cannot see that more was done in this case than was reasonably necessary and incidental to the convenient and proper execution of the work of repairing the road where it crossed the plaintiffs' land. It follows that the plaintiffs lost all title to the soil when so removed from land belonging to them, and cannot maintain an action for its conversion."

In the case of District of Columbia v. Robinson, 180 U. S., 92; 45 Law Ed. 440, the court approved instructions to the jury to the effect that the right to remove gravel depended exclusively upon the fact as to whether the excavation had been for the purpose of improving the road. That if one of the purposes was to improve the road it had the right to remove the gravel and use it on any other public road regardless of locality, or, if not desired for use on other streets that it may be disposed of in other ways.

See also Denniston v. Clark, 125 Mass., 216; Huston v. City of Fort Atkinson, 14 N. W., 444; City of Madison v. Mayers, 73 N. W., 43; City of New Haven v. Sargent, 9 Am. Report, 360; Town of Palatine v. Krueger, 12 N. E., 75.

Attention has been called to the case of Lyon v. Gormley, Exr., 53 Pa., 261, which seems at first glance to be adverse

to the rule announced in the cases previously cited herein, but a study of that case discloses that the construction was a tunnel operation and that neither the landowner nor the railroad could have known what would be encountered in the operation and that the situation presented could not have been in contemplation of the parties and therefore the matter of compensation and damages could not have been estimated. The court aptly remarked that if an unknown iron bed or a coal mine or a gold mine had been encountered that could not have been within the contemplation of the parties. There is a well recognized difference between that case and the case at bar.

The case of Hall v. Delaware, Lackawanna and Western Railroad Company, a Pennsylvania case, reported in 21 A. L. R., 1128, seems also to be adverse to the case at bar, but a reading of that case will disclose that the question of the right to dispose by sale of materials encountered was not an issue in that case and the pronouncement of the court as to that situation is obiter. The court in that case discusses the cases of Lyon v. Gormley, 53 Pa., 261 and Hendler v. Lehigh Valley Railroad Company, 209 Pa., 256; 58 Atl., 386 and over-rules the Hendler case in part.

Attention is called to the fact that most of the cases applicable to the subject under consideration here are in the venerable class and were decided when the work of excavation was prformed with pick and shovel and consequently no more excavation was made than absolutely necessary. In contrast, such work is now performed with giant power shovels capable of removing several cubic yards of excavated material in one operation. If the law is that a contractor must separate all valuable substances found in the excavation from the mass for the benefit of the owner, many practical difficulties would be encountered and additional expense incurred. In most cases this would be impractical. We conceive the law to be that when a known deposit of mineral, rock or other substance of value is necessary to be removed in constructing a highway, the landowner has the opportunity of contracting in reference thereto; and if appropriated, all such issues are submitted to a jury, and all of the elements of compensation and damage may be shown and considered by the jury in a determination of both value and damage; and when, as in this case, the landowner is in full possession of all the facts, has knowledge of the presence of the minerals, the extent and depth of the excavation, knowing that such mineral deposit must be removed, and, armed with this knowledge, fails to make timely claim of ownership of such material,

he cannot claim ownership after removal because of the sale of minerals that he knew must be removed for the purpose of constructing the improvement. If no attempt had been made to salvage the coal, and it had been excavated with the other waste materials, it would have been of no value and no claim would have been made; and, therefore, he cannot now be heard to complain of the action of the contractor. It will be found that many of the cases have been decided upon the principle of good faith, that is to say, that no valuable materials can be removed from a right of way under the mere pretense that they are being taken for the purpose of the improvement, or for use elsewhere, when in truth and in fact, the taking is for the remover's benefit. The rights of the owners of the fee have been and should be zealously protected. No question as to the right of removal or of good faith is raised in this case, because it was fully understood by the plaintiff that this excavation was to be made far below the coal strata.

We are not without some authority in Ohio upon this proposition. The case of **Prather v. Ellison** reported in **10 O. 396**, is of interest and if a correct statement of the law is decisive of the case at bar. The opinion is commended for its logical analysis of the situation presented and is as follows:

"This is a writ of error to the court of common pleas of the county of Adams, and the error complained of appears from a bill of exceptions which was taken to the opinion of the court. The action is trover, brought by the proprietor of land, against a contractor on the Zanesville and Maysville turnpike, to recover the value of timber. In the court of common pleas the cause was submitted to the court; and the evidence showed that the defendant had caused a large quantity of timber growing on that part of the land of the plaintiff through which the road was constructed, to be felled and cut into cord-wood, and that he had afterward sold it. Was he justified in so doing, is the single question for consideration. By section 11 of the charter of the company, it is made the duty of the company to open the road not exceeding one hundred feet in width; that is, they are to cut down and remove the timber growing within that space; they are to free the whole line of the road from every obstruction of that kind. It will, I presume, be admitted that under this power the company, or the contractor acting under them, would be authorized to destroy the timber after it was cut down. He might burn it upon the ground. But the right to destroy

it seems necessarily to imply an authority to make any disposition of it which should be equivalent to destruction. I do not see any difference between burning the wood on the ground and parting with it to a third person who should burn it. And I suppose there never would have been any complaint, if the defendant had merely, through the intervention of third persons as his agents, caused the wood to be burned, instead of selling it to them for that purpose; and yet the thing required to be done, and no more, is performed, which ever mode is pursued. The plaintiff is dissatisfied that the defendant should have derived any pecuniary advantage from the course which he adopted in order to free the line of the road from the incumbrance of the timber. But this can only be on the ground that he is himself entitled to that advantage. And yet how can this be, when upon the land being condemned for the purposes of the road, an assessment of all damages accruing to the proprietor is made in his favor. According to his construction he would be twice paid for the timber, first by the commissioners, and secondly by the consideration which he should receive for the wood.

But there is another difficulty in the way. If the contractor permitted the timber to remain on the ground occupied by the road, until it suited the convenience of the former owner to remove it, he would fail entirely to execute the duty imposed upon him by the charter, and if, on the other hand, he removed it upon the uncondemned land of the plaintiff, he would be guilty of a violation of his rights, and might be sued in an action of trespass, so that in whatever light we can view the question the conclusion is the same, that this action cannot be maintained."

It necessarily follows as a matter of law that if the Department of Highways had the right to remove and sell said coal, it relinquished such right in favor of the contractor.

The argument is made that the contractor was paid by the Highway Department for excavating this coal seam and therefore was unjustly enriched by the sale of said product. It might be claimed with equal merit that plaintiffs had already been paid for the coal excavated and further payment would also amount to unjust enrichment.

If, under the agreement between plaintiffs and the Highway Director, as disclosed by the journal entry in the appropriation case, the Director acquired the right to remove the coal without separating it from the waste material and had the further right to deposit the mixture on a waste dump, because unfit for use in the construction of said highway,

without liability to plaintiff, (such right we believe must be conceded) then, by what process of legal reasoning can liability be imposed against the Director of Highways or his agent, the contractor in this case, for salvaging and selling said coal. A mere statement of the proposition reveals its weakness.

In this case, the plaintiffs knew that this seam of coal would, of necessity, be removed in order to construct the improvement at the established grade, and that in order to salvage the coal, it would be necessary to remove the same as a separate operation, but notwithstanding such knowledge, no reference whatever was made to the coal seam in the entry of settlement, although the buildings on the property and their disposition were provided for. To permit recovery in such case would, in effect at least, modify, if not abrogate the generally accepted theory of the law of contracts. If the value is to be fixed by a jury a radical change of the rules of evidence in appropriation cases would be necessary. Under the present law, while the witnesses are permitted to take into consideration all of the elements that go to make up the value of the property and damages to the residue, the value and damages are each testified to as a whole, without being itemized and no witness, except on cross examination, would be permitted to place a separate value on rock or mineral. If known minerals are held to belong to the owner, procedures that have had judicial sanction for generations must be abrogated.

The court has made no attempt to enumerate or discuss in this opinion all of the cases in other jurisdiction cited by counsel and examined by the court, dealing with similar problems  Every case has its own peculiar facts, which are controlling as to the law.

The court, after diligent search, has found no case in this or other jurisdictions wherein it was held that the landowner could recover for known minerals or other materials that it was necessary to recover in making an improvement where the factual situation is at all comparable to the facts in this case.

For the reasons assigned, the finding and judgment of the court is for the defendants.

WITTEN, J, concurs.
MOORE, J, dissents.